777 F.2d 1390
 121 L.R.R.M. (BNA) 2570, 104 Lab.Cas. P 11,819
 Benita EVANGELISTA, Plaintiff-Appellant,
v.
INLANDBOATMEN'S UNION OF the PACIFIC; MTG Enterprise, Inc.;
Douglas Crute; Paula Dougherty; Mario Garcia;
and Does 1 through 10, inclusive,
Defendants-Appellees.
 No. 84-2744.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1985.
Decided Dec. 9, 1985.
 
 Gilbert T. Graham, San Francisco, Cal., for plaintiff-appellant.
 Richard S. Zuckerman, Leonard & Carder, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, ALARCON, and POOLE, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Benita Evangelista (hereinafter Evangelista) appeals from the district court's order granting summary judgment in favor of appellees Inlandboatmen's Union of the Pacific (hereinafter IBU), MTG Enterprises, Inc. (hereinafter MTG), IBU official Douglas Crute (hereinafter Crute), IBU member Paula Dougherty (hereinafter Dougherty), and MTG President Mario Garcia (hereinafter Garcia) (collectively referred to as appellees), on her complaint for wrongful discharge, breach of the duty of fair representation, intentional interference with economic advantage, and inducing breach of contract. Evangelista also appeals from the district court's denial of her cross-motion for partial summary judgment.I
 
 PERTINENT FACTS
 
 2
 Evangelista was employed by Red and White Catering in July 1979 as a snack bar attendant and bartender on cruise vessels operated by the Red and White Fleet. As a bargaining unit employee, Evangelista was covered by the collective bargaining agreement negotiated by the IBU with Red and White Catering. In February 1983, MTG purchased Red and White Catering's business and assumed all of Red and White Catering's rights and duties under its collective bargaining agreement.
 
 
 3
 The collective bargaining agreement provides that as the exclusive bargaining representative for all covered employees, the IBU has full authority to settle disputes arising out of the interpretation or application of the agreement. The agreement creates a seniority system which affords protection against layoffs and priority in re-hiring to employees who have a long duration of employment with the employer relative to that of other employees. Section 9:04 of the agreement specifically provides that seniority is interrupted by discharge, resignation, or six consecutive months of unemployment except in cases of sickness or when a leave of absence has been granted. Section 11:00 of the agreement delineates the requirements for the granting of a leave of absence. The dispute in the instant case revolves primarily around an interpretation of the leave of absence provisions in section 11:00 and the effect of Evangelista's alleged failure to comply with those provisions on her seniority status.
 
 
 4
 On July 2, 1982, Evangelista left her job at Red and White Catering and went to Hawaii, her birthplace. With the assistance of John Goviea, the IBU representative in Hawaii, Evangelista secured temporary employment in late July with Dillingham Tug and Barge in Hawaii. Evangelista worked for Dillingham for approximately two weeks. Following her layoff from Dillingham, Evangelista applied for and obtained unemployment insurance benefits which she continued to receive through December 1982. Evangelista remained eligible for unemployment benefits by assuming an "on call" status with Dillingham and the IBU, and filled out unemployment insurance forms in which she represented that she was available for work and would accept employment if it was offered. During her stay in Hawaii, Evangelista corresponded with Dougherty, a fellow employee at Red and White Catering.
 
 
 5
 In December 1982, Evangelista returned to California. She resumed work with Red and White Catering on December 8, 1982, and continued as an employee of MTG after MTG purchased Red and White Catering in February 1983. No adjustment was made on Red and White's seniority list at the time.
 
 
 6
 In June 1983, several employees who had been wrongfully terminated by Red and White Catering during 1982 were reinstated pursuant to arbitration awards. Among them were Paula Dougherty and Renate Stevenson. When Evangelista learned that Dougherty and Stevenson intended to challenge her seniority and bid for her shift on the basis that she had lost her seniority when she went to Hawaii, she filed a formal grievance concerning her status on the seniority list. Evangelista's June 21, 1983 grievance stated that she should not lose her seniority because her leave of absence and temporary employment in Hawaii had been approved by IBU official Crute pursuant to the requirements specified in section 11:00 of the collective bargaining agreement. On June 22, 1983, she sent letters to IBU Chairman George Mihalopoulos and to Crute defending her seniority status.
 
 
 7
 The IBU took no formal action on Evangelista's grievance and letters because her complaint was not ripe: she had not lost her place on the seniority list and no employee had filed any formal grievance objecting to her seniority ranking. Evangelista did, however, meet with MTG president Garcia and speak with Crute by telephone regarding her grievance during this period.
 
 
 8
 On July 29, 1983, Renate Stevenson filed a formal grievance alleging that Evangelista had worked for another company while in Hawaii and should therefore have her seniority reduced. The grievance was supported by copies of letters written by Evangelista to Dougherty from Hawaii, which discussed Evangelista's work at Dillingham. Following an investigation of Stevenson's grievance, the IBU determined that it was meritorious and that Evangelista's earlier grievance was not. Crute personally notified Evangelista of the decision to lower her seniority status on August 1, 1983.
 
 
 9
 Evangelista filed a second grievance on August 11, 1983 protesting the reduction of her seniority. Crute responded in a letter dated August 16, 1983, which explained the IBU's determination with respect to Evangelista's seniority.
 
 
 10
 On August 12, 1983, Evangelista filed an unfair labor practice charge against the IBU with the National Labor Relations Board, alleging that the IBU had failed to represent her fairly by refusing to process her original grievance and by attempting to cause MTG to terminate her. On September 30, 1983, the Regional Director dismissed her charge.
 
 
 11
 Evangelista's seniority reduction caused her to drop from eighth to seventeenth position on the IBU's list. Since the reduction she has worked only sporadically with MTG, primarily on weekends, and has been unable to secure full-time employment since August 1983.
 
 II
 PROCEDURAL POSTURE
 
 12
 Evangelista filed a complaint in Superior Court on September 29, 1983, alleging wrongful discharge, interference with economic advantage, and inducing breach of contract. Appellees removed the action to the district court on October 12, 1983 on the grounds that it was an artfully pled section 301 claim. Labor Management Relations (Taft-Hartley) Act Sec. 301, 29 U.S.C. Sec. 185 (1982). Evangelista filed an amended complaint following removal alleging breach of contract, wrongful discharge, intentional interference with economic advantage, inducing breach of contract, and breach of the union's duty of fair representation.
 
 
 13
 The district court granted appellees' motion for summary judgment on October 12, 1984, and denied Evangelista's cross-motion for partial summary judgment. The district court concluded that (1) the IBU had not breached its duty of fair representation; (2) because Evangelista did not establish a triable issue of fact with respect to her claim for breach of the duty of fair representation, her section 301 claim against MTG must also be dismissed; (3) IBU official Crute and IBU member Dougherty could not properly be sued in their individual capacities for breach of contract or for breach of the duty of fair representation; and (4) Evangelista's state law claims were preempted by federal labor law.
 
 III
 STANDARD OF REVIEW
 
 14
 We review the district court's grant of summary judgment de novo. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 981 (9th Cir.1985). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the opposing party, no genuine issue of material fact remains for trial and the substantive law was correctly applied. Fed.R.Civ.P. 56(c); Friends of Endangered Species, Inc., 760 F.2d at 981.
 
 IV
 HYBRID SECTION 301/BREACH OF DUTY CLAIM
 
 15
 A. Breach of Duty of Fair Representation Claim
 
 
 16
 Evangelista contends that summary judgment was inappropriate because she has produced sufficient evidence to raise triable issues of material fact regarding the adequacy of her representation by the IBU. Evangelista argues that the IBU breached its duty of fair representation through the following course of conduct: (1) failing to act on her first grievance for at least six weeks; (2) failing to obtain Evangelista's version of the facts surrounding her leave of absence prior to reducing her seniority; (3) failing to conduct an adequate investigation of the facts pertaining to her leave of absence; (4) failing to give Evangelista notice of her right to appeal the reduction of her seniority and of the meeting between MTG and IBU at which her grievance was discussed; and (5) allowing Crute to participate in the IBU's decision to reduce Evangelista's seniority when he had personally authorized her leave of absence and temporary employment in Hawaii.
 
 1. Duty to Investigate
 
 17
 Evangelista's first three arguments may be characterized as an assertion that the IBU failed to conduct an adequate investigation of Evangelista's first grievance. A union's duty of fair representation includes the duty to perform some minimal investigation, the thoroughness of which varies with the circumstances of the particular case. Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir.1985); Tenorio v. NLRB, 680 F.2d 598, 601 (9th Cir.1982). The union must exercise special care in handling a grievance which concerns a discharge, because it is the most serious sanction an employer can impose. Tenorio, 680 F.2d at 602.
 
 
 18
 Evangelista asserts that IBU official Crute never interviewed her to ascertain her version of the facts after she filed her June 21, 1983 grievance, and failed to interview Fred Forsberg, the MTG manager who granted Evangelista's initial request for a leave of absence. MTG argues that IBU's determination that Evangelista forfeited her seniority under the collective bargaining agreement by leaving her employment with Red and White Catering and working for another employer in Hawaii was justified on the basis of the investigation which it did undertake, because IBU's determination was based upon Evangelista's own admissions and on the language of the collective bargaining agreement.
 
 
 19
 The IBU's investigation of Evangelista's grievance was adequate under the law of this circuit. First, the IBU's failure to act immediately upon Evangelista's grievance was reasonable where the issue raised had not yet ripened into a controversy. As the Supreme Court noted in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), an employee has no absolute right to have his grievance taken to arbitration, and the union may reject unmeritorious grievances at the first step in the contractual procedure. Id. at 191, 87 S.Ct. at 917. Second, the record shows that the IBU conducted the following investigation of the dispute: when Stevenson filed a grievance squarely raising the issue, the IBU reviewed Evangelista's letters to Dougherty from Hawaii, discussed the contents of the letters with Dougherty, contacted the IBU's regional office in Hawaii to verify Evangelista's employment there, reviewed IBU's records relating to Evangelista's leave of absence, reviewed Evangelista's grievance, and reviewed the terms of the collective bargaining agreement. Such an investigation compares favorably with those which this court has found adequate. See, e.g., Eichelberger v. NLRB, 765 F.2d 851, 857 n. 10 (9th Cir.1985) (fact that union president read grievant's letter several times before reaching conclusion that grievance was unmeritorious was sufficient investigation). A union need not obtain explanations from every grievant or discharged employee in order to satisfy its duty of fair representation. See Tenorio, 680 F.2d at 602-03.[1]
 
 
 20
 Moreover, extensive investigation by a union is unnecessary where it would not have resulted in the development of additional evidence which would have altered the union's decision not to pursue the grievance. Johnson, 756 F.2d at 1466. Because resolution of Evangelista's grievance revolved solely around a question of contract interpretation, further investigation would not have aided the IBU. Unions have wide discretion in dealing with employee grievances, and need not arbitrate every case. Id. at 1465. So long as the IBU's interpretation of the collective bargaining agreement was reasonable and was not made in reckless disregard of Evangelista's rights, we will not second-guess the IBU's decision not to arbitrate her grievance. See id; Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir.1985); accord, Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir.1985).
 
 
 21
 The IBU's interpretation of the collective bargaining agreement was a reasonable one. Section 9:04 of the collective bargaining agreement provides:
 
 
 22
 Seniority shall be considered broken only by:
 
 
 23
 (a) discharge for just cause
 
 
 24
 (b) resignation, including failure to respond promptly to recall....
 
 
 25
 (c) Six (6) consecutive months of unemployment, except in cases of sickness or when a leave of absence has been granted.
 
 
 26
 Because Evangelista was not terminated and was not absent for more than six months, under the collective bargaining agreement her seniority can be considered "broken" only if she has resigned.
 
 
 27
 Evangelista apparently contends that her departure from Red and White Catering was a leave of absence rather than a resignation. The collective bargaining agreement contains the following provision regarding leaves of absence:
 
 
 28
 11:01 By written agreement between the Company and the Union, leaves of absence may be granted to employees. Such leaves of absence shall be for the period of not in excess of three (3) months, subject to renewal or extension for like periods of time by written agreement between the Company and the Union. Such leaves of absence may not be taken to seek or enjoy other employment, and shall not be abused for the purpose of evading scheduled work.
 
 
 29
 11:02 Upon return from a leave of absence granted hereunder, the employee shall be returned to his former position without loss of rights or privileges....
 
 
 30
 (emphasis added).
 
 
 31
 The parties disagree as to whether Evangelista obtained a written leave of absence which conformed to the requirements of section 11:00, and as to whether she obtained an extension of her leave. This dispute does not present a triable issue of material fact, however, because even assuming that Evangelista initially obtained an approved leave of absence and a valid extension of that leave, the fact that she sought and obtained other employment during that leave of absence negates approval of any such leave of absence under the express terms of the collective bargaining agreement.
 
 
 32
 In her deposition, Evangelista admitted that while she was in Hawaii she secured employment there. Because Evangelista violated the terms of the collective bargaining agreement prohibiting employment during a leave of absence, she had no right to be returned to her former position without the loss of her seniority under section 11:02. Thus, by seeking and accepting employment with another employer during a supposed leave of absence, Evangelista impliedly resigned, and her seniority was broken pursuant to section 9:04 of the collective bargaining agreement.[2]
 
 
 33
 Evangelista failed to raise any triable issue of material fact on the question whether the IBU breached its duty of fair representation by failing to conduct an adequate investigation of her grievance.
 
 
 34
 2. Failure To Give Notice Of Grievance Meeting And Of Right To Appeal
 
 
 35
 Evangelista next contends that the IBU breached its duty of fair representation by failing to give her notice of the grievance "hearing," an opportunity to participate therein, and notice of her right to appeal its result. Evangelista's reference to a "hearing" misconstrues the meeting between IBU and MTG representatives at which her grievance, among others, was discussed. The collective bargaining agreement does not require that affected employees be given notice of such meetings or the opportunity to be present.
 
 
 36
 Moreover, a union does not breach its duty of representation by failing to give a grievant notice and an opportunity to attend a grievance hearing where the issue is the proper construction of a collective bargaining agreement. Singer v. Flying Tiger Line, Inc., 652 F.2d 1349, 1354 (9th Cir.1981), disapproved on other grounds, DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); see also Higdon v. United Steelworkers of America, 706 F.2d 1561, 1562 (11th Cir.1983) (union's failure to give grievant notice of and opportunity to attend any particular segment of grievance process does not constitute breach of duty of fair representation); accord, Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335, 1341 (6th Cir.1975), cert. denied, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976).
 
 
 37
 Furthermore, Evangelista was not prejudiced by her inability to attend the meeting. Because Evangelista admitted in her deposition that all of the information she wanted the IBU to have was contained in her June 21, 1983 grievance and the letter she sent to Crute shortly thereafter, she could not have added any relevant information.
 
 
 38
 Finally, Evangelista's argument that the IBU failed to inform her of her right to appeal the seniority determination through the intraunion appeals process is unavailing. Union members have a duty to become aware of the nature and availability of union remedies. See Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1214 (9th Cir.1980) (citing Newgent v. Modine Mfg. Co., 495 F.2d 919, 927-28 (7th Cir.1974)). The union's failure to inform a union member of the existence of a union appeals process does not excuse the member's ignorance. Id.; see also Peterson v. Kennedy, 771 F.2d at 1255-56 (union did not breach duty of fair representation by incorrectly advising employee to file an "injury grievance" under the injury protection clause of the collective bargaining agreement and failing to rectify its error while there was still time to do so).
 
 
 39
 Evangelista has not raised any triable issue of fact regarding the IBU's failure to inform her of her right to appeal the IBU's decision on her seniority or to be present at the grievance meeting which is material to her breach of duty of fair representation claim.
 
 3. Conflict of Interest
 
 40
 Evangelista also contends that because Crute was allegedly responsible for approving her request for a leave of absence, her grievance was directed against him and he could not fairly represent her interests. This argument is meritless for the reasons discussed supra in section IVA(1). Whether or not Evangelista obtained an authorized leave of absence, she violated the terms of any such leave by accepting employment with another employer in Hawaii. Because Evangelista admitted accepting employment with another company, Crute's version of the facts surrounding her request for a leave of absence is irrelevant.
 
 
 41
 To the extent that Evangelista claims on appeal that Crute acted discriminatorily or in bad faith in an attempt to retaliate against Evangelista for her refusal to testify on Dougherty's behalf at an arbitration hearing, the record does not support her claim. Crute and Dougherty denied participation in any conspiracy to deprive Evangelista of her seniority status, and the record does not contain any admissible evidence of discrimination or bad faith by Crute.[3]
 
 
 42
 The Supreme Court has made clear that a union does not act discriminatorily when it takes a good faith position which is contrary to that of some of the employees which it represents. Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). Therefore, Evangelista has not raised any triable issue of fact regarding the alleged conflict of interest created by Crute's involvement in approving her leave of absence which is material to her breach of duty claim.[4]
 
 4. Course of Conduct
 
 43
 Evangelista contends that the IBU's entire course of conduct in this case combines to establish a breach of its duty to represent her fairly. She relies heavily on Tenorio v. NLRB, 680 F.2d 598 (9th Cir.1982). In Tenorio, we held that the union's investigation was so grossly inadequate as to constitute a reckless disregard for petitioners' rights, because (1) the union departed from its policy of interviewing all discharged employees for which it gave no legitimate explanation; (2) the dispute involved a union official, and there was a potential conflict of interest in the union's handling of the grievance; (3) the union promptly issued "travel cards" to petitioners, which preclude the holder from further dispatch by the issuing union chapter; and (4) the union owed a special duty of care because the grievance concerned discharge, the most serious sanction an employer can impose. Id. at 602. We noted, however, that the incident upon which the grievance was based was "subject to varying inferences depending on perceptions and tones of voice" and that the union's failure to obtain petitioners' version of the facts could have affected its determination not to pursue the grievance. Id. at 602 n. 5. We also cautioned that our conclusion was based on the "particular circumstances" of the case. Id. at 603.
 
 
 44
 In contrast, the dispute in the instant case revolves solely around the correct interpretation of the collective bargaining agreement. The undisputed facts established that Evangelista worked in Hawaii while supposedly on leave of absence, an act which was expressly prohibited by the collective bargaining agreement. The only question was whether this conduct amounted to a resignation under the terms of the collective bargaining agreement so that a demotion in seniority was appropriate. As discussed above, the IBU reasonably concluded that it did. Therefore, it was reasonable for the IBU not to interview Evangelista, and any conflict of interest created by Crute's involvement was irrelevant. Accordingly, under the circumstances of this case the IBU's decision not to pursue Evangelista's grievance to arbitration does not represent a breach of its duty to represent her fairly.[5]
 
 
 45
 The district court properly dismissed Evangelista's breach of duty of fair representation claim.[6]
 
 B. Evangelista's Section 301 Claim
 
 46
 Because we conclude that Evangelista has not raised any triable issues of fact material to her breach of fair duty of representation claim, we need not reach the question whether Evangelista established a section 301 claim against MTG. See Johnson, 756 F.2d at 1467 (a cause of action for breach of a collective bargaining agreement may not be maintained if the union provided fair representation).
 
 V
 CLAIM AGAINST CRUTE AND DOUGHERTY
 
 47
 Evangelista next argues that the district court erred in dismissing her hybrid section 301/breach of duty claim against IBU member Dougherty and IBU official Crute. Section 301(b) of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. Sec. 185(b) (1982), is expressly to the contrary. It provides, in relevant part, that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." In Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court held that individual union members are immune from liability under section 301(b) in a suit for breach of the collective bargaining agreement. Id. at 247-49, 82 S.Ct. at 1324-25.
 
 
 48
 The language of section 301(b) and the Supreme Court's decision in Atkinson also provide a shield for individual union members in suits for breach of the duty of fair representation. Carter v. Smith Food King, 765 F.2d 916, 920-21 (9th Cir.1985); Williams v. Pacific Maritime Association, 421 F.2d 1287, 1289 (9th Cir.1970). Further, the protection of section 301(b) extends to state tort claims against union officials and members brought in conjunction with a section 301 breach of duty claim against a union. Peterson v. Kennedy, 771 F.2d at 1257; Williams, 421 F.2d at 1289.
 
 
 49
 Evangelista argues that Crute and Dougherty may be sued in their individual capacities if they engaged in wholly individual actions not authorized by the IBU, a question which was expressly reserved in Atkinson. 370 U.S. at 249 n. 7, 82 S.Ct. at 1325 n. 7. As appellees point out, however, the Supreme Court decided this question in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), where it held that individual union members are immune from suits for damages under section 301 even if their conduct was unauthorized by the union and was in violation of an existing collective bargaining agreement. Id. at 417, 101 S.Ct. at 1845; accord, Peterson v. Kennedy, 771 F.2d at 1257.
 
 
 50
 Therefore, we must affirm the district court's dismissal of Evangelista's action as to appellees Crute and Dougherty.
 
 VI
 PREEMPTION OF PENDENT STATE LAW CLAIMS
 
 51
 Evangelista alleges state law causes of action for wrongful discharge, intentional interference with economic advantage, and inducing breach of contract. Evangelista argues that the district court erred in dismissing her claims on the grounds that they were preempted by federal labor law. We disagree. Because the resolution of Evangelista's state law claims turns upon an interpretation of the collective bargaining agreement, her claims are preempted by federal labor law.
 
 
 52
 The Supreme Court recently reexamined the preemption doctrine in Allis-Chalmers Corp. v. Lueck, --- U.S. ----, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In Allis-Chalmers, an employee brought an action against his employer, who was responsible for administering a non-occupational disability insurance plan under the collective bargaining agreement, alleging bad faith in handling his insurance claim. The Court held that when resolution of a state law claim is substantially dependent upon an interpretation of the terms of a labor contract, the claim must either be treated as a section 301 claim or dismissed as preempted. Id. 105 S.Ct. at 1916. The Court reasoned that the subject matter of section 301 calls for application of a uniform law, and expressed concern that the possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon the negotiation and administration of labor agreements. Id. at 1910-11 (citing Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). The Court concluded that the inquiry in any section 301 case where state law tort actions are also alleged is whether evaluation of the tort claim is "inextricably intertwined with consideration of the terms of the labor contract." Id. at 1912.
 
 
 53
 The instant case presents precisely such a situation. Evangelista's wrongful discharge claim is completely dependent upon resolution of a question of contractual interpretation: whether sections 9:04, 11:01 and 11:02 authorize a reduction in seniority for an employee who accepts other employment while on a leave of absence. Evangelista's claims for inducing breach of contract and interfering with economic advantage merely restate her hybrid section 301 claim against the IBU for breach of its duty of fair representation. See Carter v. Smith Food King, 765 F.2d at 921 (state law claims for breach of the covenant of good faith and fair dealing, wrongful interference with a business relationship, intentional infliction of emotional distress and constructive discharge held preempted); Peterson v. Air Line Pilots Association, 759 F.2d 1161, 1170-71 (4th Cir.1985) (state law tort claims for intentional interference with contractual relationships and civil conspiracy held preempted).
 
 
 54
 Evangelista's reliance upon this court's decision in Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), is misplaced. In Garibaldi, we concluded that Garibaldi's wrongful termination claim was not preempted by federal labor law because it was based upon a violation of state public policy. Garibaldi claimed that he had been discharged in retaliation for reporting an illegal shipment of adulterated milk to health officials after his supervisors ordered him to deliver it. We reasoned that a state claim for wrongful termination poses no significant threat to the collective bargaining process where it furthers a state interest in protecting the general public which transcends the employment relationship. Id. at 1374.
 
 
 55
 In the instant case, Evanglista does not allege that her reduction in seniority interferes with any independent state public policy. Instead, she claims that her demotion in seniority violates the state's "important interest in protecting its citizens from harassment on the job." Were Evangelista correct, virtually every wrongful discharge action would be exempt from preemption, a result which the Supreme Court indicated that it did not embrace. See Allis-Chalmers, 105 S.Ct. at 1915-16.
 
 
 56
 Therefore, we must affirm the district court's dismissal of Evangelista's pendent state claims.
 
 VII
 CONCLUSION
 
 57
 The district court properly dismissed Evangelista's section 301 claim for breach of the duty of fair representation because Evangelista failed to raise any triable issue of fact material to her claim and because the district court correctly applied the law of this Circuit to her claim. Dismissal of the actions against Crute and Dougherty was proper because they are immune from suit under section 301 as individual union members. Finally, Evangelista's state claims are preempted by federal labor law because they are dependent upon interpretation of the collective bargaining agreement, and so were properly dismissed.
 
 
 58
 The judgment is AFFIRMED.
 
 
 
 [1]
 In any event, Evangelista's contention that the IBU failed to solicit her version of the facts is not supported by the record. Not only did the IBU have her written grievance and letter in hand, but Evangelista admits that she discussed her grievance during a telephone conversation with Crute in June of 1983, and during a meeting with Garcia in the same month
 
 
 [2]
 Evangelista also contends that the phrase "other employment" in section 11:01 of the collective bargaining agreement ("such leaves of absence may not be taken to seek or enjoy other employment") does not include temporary employment. Even if Evangelista's interpretation of the collective bargaining agreement were correct, we have held that a union's conduct may not be deemed arbitrary, so as to constitute a breach of the duty of fair representation, where it errs in evaluating the merits of a grievance or in interpreting particular provisions of a collective bargaining agreement. Peterson v. Kennedy, 771 F.2d at 1254
 
 
 [3]
 Evangelista relies primarily upon inadmissible statements contained in two declarations submitted in opposition to the motion for summary judgment. In his declaration, Evangelista's attorney proffers as evidence the unsigned declaration of IBU chairman George Mihalopolous stating that it is improper for an IBU representative to handle a grievance which contains a complaint against him. Evangelista asserts that the declaration is admissible as a party admission because Mihalopoulous assented to its contents after having it read to him over the telephone. Evangelista's contention is meritless. Mihalopoulos's opinion as to the correct construction of the collective bargaining agreement--i.e., what is or is not the proper procedure for handling grievances--is an inadmissible legal conclusion. See Fed.R.Evid. 701 (opinion testimony by lay witnesses is limited to opinions which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue); Fed.R.Evid. 704 advisory committee notes (Rule 701 "affords ample [assurance] against the admission of opinions which would merely tell the jury what result to reach.... [The Rule] also stand[s] ready to exclude opinions phrased in terms of inadequately explored legal criteria.")
 In her supplemental declaration, Evangelista states that IBU delegate Jim Weiland told her that Dougherty was "out to get" her, and that Mihalopoulos told her that Crute was "out to get" her. Both of these statements constitute inadmissible hearsay. They are statements other than those made by the declarant herself while testifying, offered in evidence to prove the truth of the matter asserted, see Fed.R.Evid. 801(c), and they do not fall within any of the established exceptions to the hearsay rule, see Fed.R.Evid. 803. In light of the fact that Crute and Dougherty expressly denied participation in any conspiracy to deprive Evangelista of her seniority status, the district court did not err in concluding that the admissible evidence established that Crute did not harbor a discriminatory motive toward Evangelista, nor did he act in bad faith in handling her grievance.
 
 
 [4]
 Evangelista also contends that Crute's assurance to her that accepting temporary employment while on a leave of absence would not affect her seniority rights under the collective bargaining agreement creates a conflict of interest which would prevent him from fairly representing her interests with MTG. This argument is illogical; assuming that Crute originally believed that Evangelista's conduct was not a breach of the collective bargaining agreement, he had every incentive to continue to defend his interpretation of the collective bargaining agreement and to assert that interpretation on her behalf
 
 
 [5]
 Evangelista also contends that the IBU breached its duty of fair representation by failing to present to MTG a written statement of the facts of the dispute in accordance with the grievance procedure specified in section 5:00 of the agreement. This contention is meritless. Although it is true that union negligence may constitute a breach of the duty of fair representation where both the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim, see Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1274 (9th Cir.1983), the union must have been " 'the solitary and indivisible cause of the complete extinguishment of [the] employee's grievance rights' before liability will be imposed." Peterson v. Kennedy, 771 F.2d at 1254 (quoting Eichelberger v. NLRB, 765 F.2d 851, 855 (9th Cir.1985) ). When the union's conduct does not involve a purely ministerial act, but lies within the traditionally discretionary sphere of grievance evaluation, the union may in good faith forbear pursuit of a meritless grievance after due investigation and analysis. Eichelberger, 765 F.2d at 855 n. 7 (9th Cir.1985). Because the IBU is not required to pursue a grievance which it finds to be unmeritorious, its failure to submit a written statement of the facts of Evangelista's claim to MTG was not a breach of its duty of fair representation
 
 
 [6]
 Evangelista's reliance upon NLRB v. Brotherhood of Teamsters, 458 F.2d 222 (9th Cir.1972), is misplaced. Evangelista contends that the IBU's failure to adjust her seniority in the nine-month period which elapsed between December 1982 (when she returned to Red and White) and August 1983 (when her seniority was demoted) estopped it from reducing her seniority in August 1983. In Brotherhood of Teamsters, we held that a union was estopped from enforcing a union security agreement through a request that the company discharge an employee who was delinquent in his payment of union dues. Before making a valid demand on the company for discharge, the union took the following official acts which affirmed the employee's membership standing: it accepted partial reinstatement payments, voted to reinstate the employee, issued a current membership card, and credited his dues payments to prospective dues. Id. at 225-26. We reasoned that the employee and the company had a right to rely upon these official acts of the union. Id. at 226. Because these acts were inconsistent with the union's argument that the employee remained subject to discharge for past delinquency in payment of dues, we enforced the National Labor Relations Board's order that the union had unlawfully discriminated against the employee. Id
 Evangelista's estoppel argument does not advance her cause. The estoppel argument relates to whether the IBU violated the terms of the collective bargaining agreement by requesting Evangelista's demotion in seniority. Because Evangelista has not established that the IBU breached its duty of fair representation, we cannot consider whether it has breached the collective bargaining agreement. See Johnson, 756 F.2d at 1467. Moreover, the instant case is readily distinguishable from Brotherhood of Teamsters. The IBU took no official acts which affirmed Evangelista's seniority status, nor was the matter brought to the IBU's attention until Evangelista herself filed her first grievance. The grievance did not ripen into a controversy until Stevenson filed her grievance, at which time the IBU conducted a proper investigation and rejected Evangelista's grievance as unmeritorious. Thus, Evangelista was not misled by any official acts of the IBU; rather, for nine months she benefitted from the IBU's ignorance of her acceptance of other employment while on her leave of absence. The IBU is not estopped from enforcing against Evangelista the terms of the collective bargaining agreement regarding seniority status where it was unaware that Evangelista had accepted other employment while on her leave of absence.