116 F.3d 1485
 Robert K. FRAZIER, a Washington individual, Plaintiff-Appellant,
v.
INTERNATIONAL LONGSHOREMEN'S UNION LOCAL # 10; Stephen
PERKINS, a Washington individual; Pacific
Maritime Association; ILWU Local $19,
Defendants-Appellees.
 No. 95-36156.
 United States Court of Appeals, Ninth Circuit.
 June 24, 1997.
 
 Appeal from the United States District Court for the Western District of Washington, No. CV 94-1249 CRD; Carolyn R. Dimmick, District Judge, Presiding.
 Before: WRIGHT, CANBY and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Longshoreman Robert Frazier appeals from the partial grant of summary judgment against him. Because the parties are familiar with the facts, we do not recite them. We review de novo, and we affirm. We briefly address each claim on which summary judgment was granted, all of which involve application of the Pacific Coast Longshore Contract Document ("PCLCD").
 
 
 3
 1. Duty of Fair Representation--Assault Grievance
 
 
 4
 Unions have a duty to represent union members fairly. Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 71 (1991). Frazier contends that the International Longshoremen's and Warehousemen's Union and ILWU Local 19 (the "Union") breached this duty by rejecting his assault grievance on the basis of an unfounded interpretation of the PCLCD and without investigation. We disagree.
 
 
 5
 a. Interpretation of the PCLCD
 
 
 6
 When a union's actions are governed by its interpretation of contractual provisions, "bad faith may exist if a union maintains an illegitimate contractual interpretation" or if the union's "interpretation is ... unfounded...." Stupy v. United States Postal Serv., 951 F.2d 1079, 1083 (9th Cir.1991). Frazier contends that the Union rejected his assault grievance on the basis of unfounded interpretations of §§ 17 and 12 of the PCLCD.
 
 
 7
 Section 17. The Union's conclusion that § 17 does not authorize an assault grievance brought by a longshoreman is not unfounded. There is no provision in § 17 that provides for such a grievance. Frazier's reliance on § 17.8 is misplaced.[1] Assuming arguendo that § 17.8 could be read to authorize grievances by longshoremen, the Union's contrary interpretation is not unfounded. Sections 17.81 and 17.811 only explicitly authorize employers to file complaints against offending longshoremen, reflecting the premise that only employers can file § 17.8 claims. Further, reading § 17.82 to allow the Joint Port Labor Relations Committee ("JPLRC") to act on complaints from any party would create an irrational redundancy. If any party could complain directly to the JPLRC under § 17.82, then there would be no reason for employers to make their initial complaints to the union, as § 17.81 expects them to, or to clear § 17.811's procedural hurdle. The Union's conclusion that § 17.8's grievance procedure can only be triggered by an employer's complaint was not unfounded.
 
 
 8
 Frazier's reliance on §§ 17.124-125 is also misplaced. Section 17.124 states that it is the duty of the JPLRC "To investigate and adjudicate all grievances and disputes according to the procedure outlined in § 17." Section 17.125 states that it is the duty of the JPLRC "To investigate and adjudicate any complaint against any longshoreman whose conduct on the job or in the dispatching hall causes disruption ... in the relationship of the parties hereto...." Frazier suggests that the general language of these provisions requires the JPLRC to address any action brought by anyone that could be described as a grievance or complaint, but the Union's conclusion that these provisions refer only to grievances and complaints authorized by the contract itself[2] seems more workable and cannot be called unfounded.
 
 
 9
 Section 12. Frazier also relies on § 12.4 of the PCLCD, which authorizes the JPLRC to discipline longshoremen who create disturbances at certain meetings.[3] Assuming arguendo that § 12.4 applies to conduct at stop-work meetings like the one involved in this case, it still need not be read to authorize longshoremen to bring grievances from those meetings. No part of § 12 says that longshoremen may bring such grievances--or that anyone may bring any grievance. Instead, other portions of the PCLCD authorize grievances based on disruptions of the meetings covered in § 12, including § 17.8, which allows employers to file complaints against disruptive longshoremen. Thus, one reasonable reading of § 12 leaves the question of what constitutes a valid grievance to other provisions of the PCLCD. The Union's interpretation was not unfounded.
 
 
 10
 b. Investigation of the assault grievance
 
 
 11
 Frazier also maintains that the Union failed adequately to investigate his PCLCD assault grievance and thereby breached its duty of fair representation. It is true that, in general, a union's duty of fair representation includes the duty to perform some minimal investigation, Evangelista v. Inlandboatmen's Union, 777 F.2d 1390, 1395-96 (9th Cir.1985), but when a grievance is considered on the basis of the facts asserted by the grievant, and "revolve[s] solely around a question of contract interpretation," further investigation is not required. Id. at 1396. Here, the Union accepted Frazier's facts as true and rejected Frazier's assault claim on the basis of its interpretation of the contract.
 
 
 12
 2. Duty of Fair Representation--Discrimination Grievance
 
 
 13
 Frazier also contends that the decertification of his discrimination appeal, which prevented him from appealing to the Coast Arbitrator, was based on an unfounded interpretation of § 17.4 and 13 and was a breach of the Union's duty.[4] We disagree.
 
 
 14
 Section 13 of the PCLCD prohibits discrimination on the basis of race or on the basis of attitude towards the Union. Section 13 is enforced through § 17.4, which establishes a special grievance procedure and authorizes a series of appeals culminating in appeal to the Coast Arbitrator. The parties to the PCLCD have required that discrimination appeals be "certified" so as to weed out grievances which do not have a discrimination component.[5] It is true that § 17.43 states that an appeal from the decision of the JCLRC can be presented to the Coast Arbitrator, and that § 17.43 does not appear to make this right of appeal contingent on certification by the JCLRC. It is also true that § 17.43 does explicitly require certification in a narrow class of grievances involving registration questions, suggesting that when the authors of § 17.43 wanted to make appeal contingent on certification, they expressly did so. Nonetheless, the Union's interpretation of these passages is not implausible. As it observed, § 17.421 gives the JCLRC the power to "confirm or reverse or modify" the decision of the JPLRC. This power can include the power to "reverse or modify" the JPLRC's decision to certify a discrimination grievance in the first place.
 
 3. Breach of PCLCD
 
 15
 Frazier also contends that both the Union and the Pacific Maritime Association ("PMA") breached the PCLCD, which is a collective bargaining agreement. Because Frazier cannot show that the Union breached its duty of fair representation, he also cannot show that either the Union or the PMA breached the PCLCD. DelCostello v. IBT, 462 U.S. 151, 164-65 (1983); Evangelista, 777 F.2d at 1400.
 
 4. Discrimination Claims
 
 16
 Frazier also contends that he established issues of material fact in support of two discrimination claims. We disagree.
 
 
 17
 a. Section 1981 discrimination claim
 
 
 18
 42 U.S.C. § 1981 prohibits discrimination in the contractual context. To establish § 1981 liability, a plaintiff must show intentional racial discrimination. Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir.1987).
 
 
 19
 Frazier has not offered evidence sufficient to establish discriminatory intent. The fact that discrimination has been alleged in another proceeding against the appellees is not sufficient evidence--at least not here, where no findings, evidence, or documents from the other case have been introduced into the record. Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir.1988). Similarly, the fact that some observers and members have alleged that discrimination is common in the Union, without any specific evidence against the actors involved in this case, is insufficient to show that these defendants acted with discriminatory intent. Id.
 
 
 20
 The grievance-hearing testimony of present Union members and officers that they had heard other members and officers refer to Frazier as a "mongrel" and discuss him in racially derogatory ways is disturbing, and in some cases the use of racial slurs by institutional officers can support an inference of discriminatory motive. See Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996); see also Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470, 1479 (9th Cir.1995) (age discrimination); Lindahl v. Air France, 930 F.2d 1434, 1439 (9th Cir.1991) (gender discrimination). This court has never found, however, that isolated racial slurs that were neither spoken by the defendants, nor spoken to the plaintiff, unsupported by other material evidence, are sufficient to ward off summary judgement. More is needed to find that the specific actors involved here acted with racial animus.
 
 
 21
 b. Section 1985 conspiracy claim
 
 
 22
 In order to prove a conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show that defendants (1) conspired (2) for the purpose of depriving a person or class of persons of the equal benefits of the laws, and that (3) at least one conspirator committed an act in furtherance of the conspiracy, (4) resulting in injury to the plaintiff. Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Frazier's evidence shows no more than that some of the various defendants occasionally met with each other and may have discussed Frazier's grievances. This is not sufficient to support an inference either of racial animus or a "meeting of the minds."
 
 
 23
 AFFIRMED and REMANDED for further proceedings.[6]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The relevant portions of § 17.8 provide:
 
 
 [17]
 81 ... any employee who is guilty of deliberate bad conduct ... shall be [disciplined].... Any Employer may file with the Union a complaint ... and the Union shall act thereon
 
 
 [17]
 811 If within 30 days thereafter the Employers are dissatisfied with the disciplinary action taken under 17.81, then the following independent procedure of 17.82 may be followed
 
 
 [17]
 82 The Joint Port Labor Relations Committee has the power and the duty to impose penalties on longshoremen who are found guilty of [various offenses, including assault]
 
 
 [2]
 There are two kinds of grievances or complaints that an individual longshoreman is explicitly authorized to bring--a discrimination grievance under § 17.4, and a grievance regarding job dispatching under § 17.73
 
 
 [3]
 Section 12.4 provides that:
 Any registered longshoreman refusing to attend [the meetings specified in § 12.2 and § 12.3] or creating a disturbance which frustrates the purpose of same shall be [disciplined] at the discretion of the [JPLRC].
 
 
 [4]
 Section 17.4 provides, in relevant part:,
 
 
 [17]
 4 When any longshoreman ... claims that he has been discriminated against in violation of § 13 ... he may ... have such complaint adjudicated hereunder
 
 
 [17]
 41 Such remedy shall be begun by the filing of a grievance with the [JPLRC]
 
 
 [17]
 42 ... the man involved may appeal the decision of the [JPLRC]. Such appeal shall be to the Joint Coast Labor Relations Committee ["JCLRC"]
 
 
 [17]
 421 If ... appeal is taken ... the [JCLRC] shall either confirm or reverse or modify the decision of the [JPLRC]
 
 
 [17]
 43 An appeal from the decision of the [JCLRC] can be presented to the Coast Arbitrator
 
 
 [5]
 This requirement was established in a letter from the JCLRC to "All Joint Labor Relations Committees" which states "it is very important in the initial processing of any [ § 13] grievance by the Joint Labor Relations Committee that it be determined if, in fact, the claim is a proper grievance which falls under Section 13."
 
 
 [6]
 Because Frazier has not prevailed on any of his claims, his request for attorney's fees is moot