(2007)
Diana L. GARCIA, Plaintiff,
v.
SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT; International Brotherhood of Electrical Workers Local Union 266, John Does I-V and Jane Does I-V; Black Corporations I-III and White Partnerships I-III, Defendants.
No. CV-05-1279-PHX-ROS.
United States District Court, D. Arizona.
September 30, 2007.

ORDER
ROSLYN O. SILVER, District Judge.
Pending are various defense motions. The Court will deny SRP's motions to strike, will grant in part and deny in part SRP's Motion for Summary Judgment, and will grant the Union's Motion for Summary Judgment.

BACKGROUND
The following facts are not disputed. In 1987, the Plaintiff, Diana L. Garcia (a hispanic woman), was hired by Salt River Project Agricultural Improvement and Power District ("SRP") (SRP SOF ¶ 1). Plaintiff held various positions with SRP until she became a Tradeshelper in 1994 (SRP SOF ¶ 2). Later, in 1999, she was promoted to the position of Equipment Operator II, a position in which Plaintiff operated mobile cranes (SRP SOF ¶ 3). On April 27, 2004, while Plaintiff was operating a crane to replace a transformer in a mobile park, the crane tipped over and crashed into two mobile homes (SRP SOF ¶ 5).
An SRP investigation determined that the crane accident was preventable. The mobile crane had four stabilizing legs called "outriggers" on the corners of the bed of the truck that can be extended out six feet from the truck (SRP SOF ¶ 16). Plaintiff was trained that by fully extending the outriggers the stability of the crane is maximized and to use larger pads on the outriggers whenever the ground was questionable in any way (SRP SOF ¶ 16, 18).[1] Plaintiff also understood that, as the Equipment Operator, she had full authority not to go forward with a lift that she felt was unsafe or improper and that she had full authority to tell her supervisor that the lift was unsafe and should not proceed (SRP SOF ¶ 24-25).
When Mike Kirby (a white male), foreman of the crew on which Plaintiff was working on April 27th, directed the set up of the crane in preparation to replace the transformer the two front outriggers were not fully extended (PSOF ¶ 1-2; SRP SOF ¶ 38). Plaintiff was in agreement with the way the crane was set up (SRP SOF ¶ 40). Further, while three of the outriggers were placed on asphalt or concrete, the right rear outrigger was placed on dirt (SRP SOF ¶ 39). The larger pad was not used to increase the stability of the right rear outrigger placed on the dirt (SRP SOF ¶ 57). When Plaintiff began lowering the transformer to its destination, the right rear outrigger sunk into the ground and the crane crashed into the mobile homes (PSOF ¶ 20). An SRP investigation revealed that the cause of the accident was failure to properly extend the outriggers and set them on solid footing (PSOF ¶ 25).
Representatives from the International Brotherhood of Electrical Workers Local Union 266 ("Union") were present during much of the investigatory process. Following the accident, SRP interviewed all the employees who witnesses the accident, including Plaintiff (Union's SOF ¶ 4). A Union representative was present during these interviews (Union's SOF ¶ 4). A Union representative also talked with Plaintiff and took photos of the crane after the accident (Union's SOF ¶ 6). At an SRP interview at which a Union representative was present, Plaintiff stated: "I take full responsibility for the operation of that vehicle" (Union's SOF ¶ 8). However, Plaintiff later clarified that she accepted responsibility for the operation of the crane, not the entire accident (SRP SOF ¶ 74). A Union representative also consulted other crane operators who advised the Union that the crane was not set up properly (Union's SOF ¶ 9).
After SRP reviewed the causes of the crane accident and Plaintiff's history of prior accidents, it initially decided to terminate Plaintiff's employment as a result of the crane accident (SRP SOF ¶ 71). SRP considered in making its decision that, prior to this accident, Plaintiff was involved in three other accidents which SRP had previously determined to be preventable: she backed an SRP truck into a building at a car dealership in 1998 and she ran into a card reader for a gated entrance to an SRP facility in both 2000 and 2001 (SRP SOF ¶ 7, 66). After the 2001 accident, Plaintiff was formally disciplined and warned that any further accidents could result in further discipline, including discharge (SRP SOF ¶ 66). Plaintiff presented evidence that fourteen other males with a total of 64 SRP Safety Code violations were never discharged for their behavior (PSOF ¶ 31).
At the urging of the Union on Plaintiffs behalf and with the Union's consent, SRP agreed to allow Plaintiff to choose demotion to her prior position of Tradeshelper in lieu of termination (SRP SOF ¶ 72). Under the terms of the demotion option, Plaintiff could have later become eligible to bid back up to higher-rated positions, including that of an Equipment Operator, as long as she did not operate a crane (Union's SOF ¶ 14). The Union determined that the demotion offer was the best that it could do to minimize the disciplinary action (Union's SOF ¶ 12). The foreman, Mr. Kirby, received a written reminder as discipline for his part in the accident, in which he was placed on probation for 18 months (PSOF ¶ 30).
Plaintiff rejected the demotion option and her employment with SRP was terminated on May 3, 2004 (SRP SOF ¶ 9-10). After Plaintiff was discharged, the Union filed a formal grievance on May 4, 2004, but later withdrew it because the Union did not feel the grievance had merit (Union's SOF ¶ 17). Plaintiff filed her charge of discrimination with the EEOC on August 9, 2004 (SRP SOF ¶ 84). Subsequently, on December 13, 2004, Plaintiff filed suit against SRP alleging discrimination and hostile work environment. Plaintiff alleges that she was subject to a hostile work environment because of her gender, race, and national origin from the time she began working with SRP in 1987 until October 2003. (See PSOF ¶ 34-45; SRP SOF ¶ 76-77). Plaintiff also brought suit against the Union alleging breach of the duty of fair representation and breach of contract.

ANALYSIS

I. Jurisdiction
Plaintiff has brought this suit pursuant to Title VII of the Civil Rights Act of 1964. The Court has federal question jurisdiction. 28 U.S.C. § 1331. And the Court has jurisdiction over Plaintiffs state law claims pursuant to the supplemental jurisdiction statute. 28 U.S.C. § 1367.

II. Motions to Strike
SRP moves to strike "evidence that 14 males with 64 total violations of Defendant SRP's Safety Code were never discharged for their behavior," which was included in Plaintiffs Statement of Facts. SRP also moves to strike Plaintiffs thirteenth supplemental disclosure statement which discloses this information.[2] SRP seeks to strike this evidence because these 14 males were not identified before the discovery deadline in response to an SRP interrogatory which requested Plaintiff to "[i]dentify all SRP employees whom you claim were similarly situated to you, but were treated more favorably by SRP." (Doc. 162, Ex. A.)
However, in Plaintiffs Response to SRP's Motion for Summary Judgment, she does not argue that these 14 males are similarly situated. Rather, Plaintiff uses this evidence to argue that her firing was a pretext for discrimination. (See P's Resp. to MSJ at 12-13.) The Court will not consider the evidence of the 14 males when deciding whether similarly situated persons outside the protected class were treated more favorably than Plaintiff.[3] Consequently, the Court will deny SRP's motions to strike.

III. Summary Judgment Standard
A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P, 56(c): see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.
Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255, 106 S.Ct. 2505. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor" at the summary judgment stage. Id. Finally, Rule 56(e) contemplates the result of a party's failure to respond adequately to a motion for summary judgment. If the non-moving party does not respond by setting forth specific facts showing there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the [non-moving] party." Fed. R.Civ.P. 56(e).

IV. Disparate Treatment Claim Against SRP
Plaintiff alleges that SRP targeted Plaintiff for more severe punishment due to her gender, race, and national origin. Specifically, Plaintiff argues that she received disparate treatment because she was subjected to greater punishment than Mr. Kirby.
The proper legal framework for determining whether Plaintiffs disparate treatment claim should survive summary judgment is the burden shifting scheme: Plaintiff must establish a prima facie case of discrimination; if Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to SRP to articulate a legitimate, nondiscriminatory reason for terminating Plaintiffs employment; and if SRP does so, Plaintiff must demonstrate that SRP's articulated reason is a pretext for unlawful discrimination by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 658-659 (9th Cir.2002) (citations and internal quotations omitted).
To establish a prima facie case for her claim, Plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) similarly situated persons outside the protected class were treated more favorably. Aragon, 292 F.3d at 658. Here, the first three elements are clearly met. However, Plaintiff cannot establish a prima facie claim of disparate treatment because Mr. Kirby was not similarly situated.
"In order to show that the `employees' allegedly receiving more favorable treatment are similarly situated . . ., the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir.2006). For example, in Moran, the plaintiffs, Major League Baseball ("MLB") players who had played less than the number of years required to vest certain benefits, argued that they were similarly situated to former Negro League players who had also played less than the required number of years, but who received the benefits. Id. Although the court noted that there were some similarities, it found that the plaintiffs were not similarly situated in all material respects because they were "never prevented from playing for a MLB team, and thus unable to acquire the necessary longevity." Id. Moreover, the plaintiffs never played in the Negro Leagues, a primary requirement for eligibility under the Negro League Plans. Id.
Like the plaintiffs in Moran, Plaintiff is not similarly situated in all material respects to Mr. Kirby. A major consideration in SRP's decision to terminate Plaintiffs employment was her history of preventable accidents. Prior to the crane accident, Plaintiff was formally disciplined and expressly warned that any further accidents could result in termination. Plaintiff has presented no evidence of prior safety violations or preventable accidents for Mr. Kirby. Further, Plaintiff and Mr. Kirby had different responsibilities. Mr. Kirby as foreman had overall responsibility for the safe completion of the job and to oversee the work of all the members of the crew. Plaintiffs responsibility was limited to the operation of the crane. While the parties contest whether Plaintiff was more responsible for the accident than Mr. Kirby, Plaintiff has presented no evidence about whether SRP has ever disciplined a foreman with general responsibility more or less than an employee with specific responsibility. Accordingly, the Court will grant summary judgment in favor of SRP on the Plaintiffs disparate treatment claim.

V. Hostile Work Environment Claim against SRP
Plaintiff based her hostile work environment claim on several incidents that occurred over her 17 years of employment with SRP. "In determining whether an actionable hostile work environment claim exists, [the courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotations omitted). Acts occurring more than 300 days from the date a claimant filed a claim with the Equal Employment Opportunity Commission are time barred if the act is unrelated to the unlawful employment practice that occurred within the 300 day limitation period. Id. at 117-18, 122 S.Ct. 2061.
In the present case, Plaintiff filed her charge of discrimination with the EEOC on August 9, 2004. Therefore, the 300 day limitation period only extends back to acts occurring on or after October 14, 2003. Plaintiff alleged that a crew leader called Plaintiff derogatory names on more than on occasion in October of 2003. However, Plaintiff has alleged no other incidents that occurred within the 300 day limitation period. In its motion for summary judgment, SRP argued that the other incidents alleged by Plaintiff, which fell outside the 300 day limitation period, are barred because they are unrelated to these name calling incidents in October of 2003. Further, SRP argued that the name calling incidents, by themselves, are insufficient to establish a hostile work environment claim. Plaintiff failed to specifically respond to these arguments in her response to SRP's Motion for Summary Judgment.
Generally, a party's failure to respond to arguments in a motion "may be deemed consent to the denial or granting of the motion and the Court may dispose of the motion summarily." Local Rule 7.2(1). However, in the factual summary included in Plaintiffs Response she includes a section entitled, "Plaintiff's Discriminatory and Hostile Experiences While Employed by Defendant SRP." (See P's Resp. at 5-6.) Based on this, it is unclear whether Plaintiff has abandoned her hostile work environment claim. Accordingly, the Court will allow Plaintiff to file a supplemental response for the specific and limited purpose of addressing the arguments raised by SRP regarding her hostile work environment claim.

VI. Breach of Duty of Fair Representation Claim against the Union
Both parties agree that the Union owes a duty of fair representation to Plaintiff governed by federal labor statutes. (See Union's MSJ at 8-9; P's Resp. at 5-6). Plaintiff alleges that the Union breached its duty of fair representation because Plaintiff was subject to more severe disciplinary action than Mr. Kirby and the 14 other males, and the Union failed to perform "any sort of investigation into the accident."
The duty of fair representation requires a union to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union breaches this duty only if its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190, 87 S.Ct. 903. A union's conduct is arbitrary only if "it is irrational, when it is without a rational basis or explanation." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); see also Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) ("[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a `wide range of reasonableness,'. . . as to be irrational."). Mere negligence in carrying out the duty of fair representation does not constitute a breach of the duty of fair representation. United Steelworkers of America v. Rawson, 495 U.S. 362, 372-73, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).
"A union's duty of fair representation includes the duty to perform some minimal investigation, the thoroughness of which varies with the circumstances of the particular case." Evangelista v. Inlandboatmen's Union of Pacific, 777 F.2d 1390, 1395 (9th Cir.1985). "[O]nly an egregious disregard for union members' rights constitutes a breach of the duty of investigation." Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir.1985). For example, in Eichelberger v. NLRB, 765 F.2d 851, 857 (9th Cir.1985), the court found that a union's investigation was adequate when the union president merely read the grievant's letter several time before reaching the conclusion that further investigation was unnecessary. In addition, "extensive investigation by a union is unnecessary where it would not have resulted in the development of additional evidence which would have altered the decisions not to pursue the grievance. Evangelista, 777 F.2d at 1395-96.
The Union satisfied its duty of fair representation as a matter of law. No reasonable finder of fact could find that the Union acted so far outside the wide range of reasonableness, when it negotiated with SRP to demote Plaintiff in lieu of terminating Plaintiff, as to be irrational. The crane accident was very serious and the facts establish as a matter of law that at least part of the responsibility for this accident rests on Plaintiffs shoulders. Before the Union's involvement, SRP planned on terminating Plaintiff. However, as a result of the Union's negotiations, Plaintiff could have kept her job and later have been eligible to bid into the position of Equipment Operator. This offer was not irrational.
Comparisons to other male employees do not show that Plaintiff was treated unfairly. Plaintiff has not presented any evidence that the Union negotiated on behalf of Mr. Kirby or any of the other 14 males. Moreover, as stated above, Plaintiff and Mr. Kirby were not similarly situatedPlaintiff had a long history of safety violations and held a different responsibility. There is simply no evidence of invidious discrimination on the part of the Union. See O'Neill, 499 U.S. at 81, 111 S.Ct. 1127; Simo v. Union of Needletrades, 322 F.3d 602, 618-19 (9th Cir.2003).
The Union's investigation also satisfied its obligation of fair representation. It was present during interviews of SRP employees who witnessed the accident; the Union spoke with the Plaintiff; the Union took photos of the crane; the Union consulted other crane operators; and the Union considered Plaintiffs own admission that she bore responsibility for the operation of the crane. Given these efforts, no reasonable fact finder could find that the Union's investigation was an egregious disregard of Plaintiffs rights.
Plaintiff contests that the "Union did nothing to pursue the idea that the ground giving way was the cause of the accident" (P's Resp., to Union's MSJ at 10). However, Plaintiff offers no evidence which would show the crane would not have crashed if it was properly set up or that evidence of "the ground giving way" would have altered the Union's decision not to pursue the Plaintiffs grievance. See Evangelista, 777 F.2d at 1395-96 ("[E]xtensive investigation by a union is unnecessary where it would not have resulted in the development of additional evidence which would have altered the decisions not to pursue the grievance."). Accordingly, the Court will grant the Union's motion for summary judgment on Plaintiffs fair representation claim.

VII. Breach of Contract Claim against the Union
Plaintiff claims the Union breached a contract between her and the Union. However, Plaintiff presented no evidence concerning which contract the Union breached, the terms of the contract, or how the Union breached its terms. Plaintiff has not met her burden of offering evidence to establish an issue of fact. Thus, the Court will grant the Union's motion for summary judgment on Plaintiffs breach of contract claim.
Accordingly,
IT IS ORDERED SRP's Motion to Strike re Portions of Plaintiffs Separate Statement of Facts (Doc. # 162) is DENIED.
IT IS FURTHER ORDERED SRP's Motion to Strike Plaintiff's Thirteenth Supplemental Disclosure Statement and Supplemental Responses to Interrogatories (Doc. # 174) is DENIED.
IT IS FURTHER ORDERED SRP's Motion for Summary Judgment (Doc. # 145) is GRANTED IN PART and DENIED IN PART. Plaintiff's disparate treatment claim is dismissed with prejudice.
IT IS FURTHER ORDERED Plaintiff may file a supplemental response to SRP's Motion for Summary Judgment on Plaintiff's hostile work environment claim within 10 days of the date of this order. If Plaintiff files a supplemental response, Defendant may have 10 days after the date Plaintiff's supplemental response to file a supplemental reply.
IT IS FURTHER ORDERED the Clerk of the Court dismiss Plaintiff's case with prejudice if Plaintiff fails to file a supplemental response within 10 days of the date of this order.
IT IS FURTHER ORDERED the Union's Motion for Summary Judgment (Doc. # 147) is GRANTED. Plaintiffs case against the Union is DISMISSED WITH PREJUDICE.
NOTES
[1] The operator's manual for the crane, which Plaintiff was expected to read and follow, also instructs that "[t]he outriggers shall be fully extended . . . before operating the boom" and that "[i]t may be necessary to provide additional support under the outrigger floats to spread the load over a larger bearing surface" (SRP SOF ¶ 22, 26).
[2] SRP's motions to strike are more properly characterized as an objection to the use of evidence. See Fed.R.Civ.P. 37(c)(1).
[3] Likewise, if Plaintiff was trying to introduce the evidence of the 14 males to show that similarly situated persons outside the protected class were treated more favorably than herself, the Court will not consider the evidence because this information was not supplemented before the end of the discovery deadline. See Fed.R.Civ.P. 37(c)(1). Plaintiff's failure to supplement her interrogatory response would not be harmless.