Kenneth A. JOHNSON,
Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE
and National Rural Letter Carriers
Association, Defendants-Appellees.

No. 84–3927.

United States Court of Appeals,
Ninth Circuit.

Submitted April 2, 1985 *.

Decided April 5, 1985.

As Amended May 3, 1985.

 

* This panel is unanimously of the opinion that oral argument was not required. Fed.R.App.P. 34(a).

John A. Bardelli, Spokane, Wash., for plaintiff-appellant.

John E. Lamp, Earl Hicks, Spokane, Wash., Edward F. Ward, Jr., Lori Joan Dym, Washington, D.C., for defendants-appellees.

Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Kenneth A. Johnson was discharged from the U.S. Postal Service following his conviction for third-degree theft arising from off-duty conduct. Johnson and his wife sued the Postal Service and his union for reinstatement, damages and backpay. The plaintiffs alleged breach of the collective bargaining agreement by the Postal Service and violation of the union's duty of fair representation. Following presentation of the plaintiff's case on liability, the district court granted the defendants' Rule

41(b), Fed.R.Civ.P.,[1] motions for dismissal and entered oral findings. We affirm.

FACTS

Johnson, a college graduate, was hired by the U.S. Postal Service in the spring of 1975 as a part-time substitute rural letter carrier in Spokane. Rural carriers act as traveling post offices, selling stamps and money orders to customers.

In June 1976, Johnson became a full-time rural carrier assigned to Spokane's Rosewood Station. He served approximately 500 patrons and drove 100 miles per day.

Previously, full-time rural carrier positions were filled by appointment based on system-wide seniority. Johnson was promoted to full-time status pursuant to a new contract agreement which gave senior part-time workers first priority for new full-time jobs. City carriers and management coveted the position Johnson had won.

He was harassed by some of his co-workers. Postal employees called him names, threatened to "plant" mail in his car and discarded some of his mail. Additionally, he worked an overburdened route for the first 16 months that he was a full-time employee. There is evidence that he increasingly relied on alcohol to cope with job-related stress.

During his employment with the Postal Service, Johnson joined the National Rural Letter Carriers Association ("NRLCA") union. It was the certified collective bargaining representative of the bargaining unit to which he belonged.

In July 1975, the Postal Service and NRLCA entered into a collective bargaining agreement ("Agreement"). It stated in pertinent part:

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

\* \* \* \* \* \*

When there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment can be imposed, the advance notice requirement shall not apply and such an employee may be immediately removed from pay status.

Collective Bargaining Agreement (July 21, 1975—July 20, 1978), Pltf.Ex. 1, Art. XVI, at 33, 34.

While off duty on the evening of January 28, 1978, Johnson and a friend were arrested for stealing air pressure regulators from a railroad yard. Johnson did not deny taking a regulator, valued at $140.

On February 10, he entered a guilty plea to the misdemeanor offense of third-degree theft in Spokane County District Court. He was fined $75 and given a 30-day suspended sentence with one year deferred. His theft conviction appeared in the court records section of the local newspaper which served his postal route.

On February 16, 1978, Johnson was discharged from his employment with the Postal Service. The letter of termination indicated the sole reason for removal was that he was found guilty of a crime for which a sentence of imprisonment could be

---

**1.** Rule 41(b) provides in pertinent part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

imposed. The letter added: "Your retention in an active duty status may result in damage to U.S. Postal Service property, loss of mail or funds, or may be detrimental to the interest of the government or injurious to you, your fellow workers, or the general public."

In July 1982, the theft charge against Johnson was dismissed pursuant to Section 3.66.067 of the Revised Code of Washington.[2]

Article XV of the Agreement provided a three-step grievance procedure leading to binding arbitration. Johnson filed a grievance concerning his discharge. The union's local steward, Leland Hurlbutt, declined to represent Johnson in the grievance process and turned the case over to Neil M. Buchanan, the union's state steward, who appealed the Step 1 denial. Buchanan discussed the case with Johnson and another employee to prepare for the Step 2a meeting.

After the Postal Service denied the Step 2 appeal, Buchanan forwarded the grievance file to Tom W. Griffith, the union's regional representative, for a decision whether to arbitrate the discharge. Griffith communicated with Johnson to obtain additional information about the theft. Before a decision was made, Johnson's case was set for arbitration to protect the union's rights.

Meanwhile, the union forwarded the file to its General Counsel, William B. Peer, for his review and legal opinion. As an experienced labor lawyer, Peer was aware of several hundred arbitration decisions in similar cases. He recommended against taking Johnson's grievance to arbitration because he believed there was little likelihood of success.

## STANDARD OF REVIEW

■ On a Rule 41(b) motion, the trial judge weighs the evidence, resolves conflicts and determines where the preponderance lies. *See Ellis v. Carter*, 328 F.2d 573, 577 (9th Cir.1964). The motion may be granted even if the plaintiff has made out a *prima facie* case, provided the court is convinced that the evidence preponderates against the plaintiff. *Securities and Exchange Commission v. Murphy*, 626 F.2d 633, 658 (9th Cir.1980).

■ We review factual findings made pursuant to Fed.R.Civ.P. 41(b) under the "clearly erroneous" standard. An appellate court may not set aside findings of fact unless "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed.2d 746 (1948); *Sutton v. Atlantic Richfield Co.*, 646 F.2d 407, 412 (9th Cir. 1981). Credibility determinations are insulated from appellate review. *Sutton*, 646 F.2d at 411.

Whether the district court's factual findings are clearly erroneous is separate from the question whether, under the facts and law, the plaintiff has shown no right to relief. *5 Moore's Federal Practice*, ¶ 41.-13[1], at 41–166—41–167 (1984). *See e.g., Ingraham v. Wright*, 498 F.2d 248 (5th Cir.1974), *aff'd*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (appellate court sustained findings of fact but reversed order of dismissal); *American Plan Corp. v. State Loan & Finance Corp.*, 365 F.2d 635, 639 (3rd Cir.1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 719, 17 L.Ed.2d 548 (1967) (clearly erroneous rule has no application in deciding whether trial court applied correct legal standard).

**2.** Wash.Rev.Code § 3.66.067 (1983) states:

**3.66.067 Assessment of punishment—Deferral of sentence, probation—Withdrawal of plea and dismissal of charges.** After a conviction, the court may defer sentencing the defendant and place him on probation and prescribe the conditions thereof, but in no

case shall it extend for more than two years from the date of conviction. During the time of the deferral, the court may, for good cause shown, permit a defendant to withdraw his plea of guilty, permit him to enter a plea of not guilty, and dismiss the charges against him.

■ It is unclear what standard of review applies to "ultimate findings" made pursuant to a Rule 41(b) motion. *See Pullman-Standard v. Swint,* 456 U.S. 273, 289–90 n. 19, 102 S.Ct. 1781, 1790–91 n. 19, 72 L.Ed.2d 66 (1982) (substantial authority on both sides of the issue); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983) (Ninth Circuit cases divided). We believe *de novo* review is warranted because mixed questions of law and fact are involved. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2376, at 248 (1971); *cf. United States v. McConney,* 728 F.2d 1195, 1199–1204 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (discussing mixed questions of law and fact).

## ANALYSIS

### *Duty of Fair Representation*

This action is brought under 39 U.S.C. § 1208(b) of the Postal Reorganization Act, which gives district courts jurisdiction over "suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees...." Because that statute is essentially identical to Section 301(a) of the National Labor Relations Act, *Bowen v. United States Postal Service,* 459 U.S. 212, 232 n. 2, 103 S.Ct. 588, 600 n. 2, 74 L.Ed.2d 402 (1983), we may properly rely on Section 301 cases for guidance.

■ A labor union's duty of fair representation is a "statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Breach occurs only when a union acts in an arbitrary, discriminatory or bad faith manner. *Id.* at 190, 87 S.Ct. 916. A union's conduct is arbitrary if "without rational basis." *Robesky v. Qantas Empire Airways, Ltd.,* 573 F.2d 1082, 1089 (9th Cir. 1978).

The Supreme Court has emphasized that unions must have wide discretion to act in what they perceive to be their members' best interests. *See Ford Motor Co. v. Huffman,* 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed.2d 1048 (1953). This circuit also has stressed the importance of preserving union discretion by narrowly construing the unfair representation doctrine. *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1485 n. 1 (9th Cir.1985) (Ferguson, J., concurring).

■ Unions need not arbitrate every case. *Vaca,* 386 U.S. at 191–92, 87 S.Ct. at 917–18. One reason is the high cost of arbitration. *Schneider Moving & Storage Co. v. Robbins,* — U.S. ——, 104 S.Ct. 1844, 1851 n. 19, 80 L.Ed.2d 366 (1984). Unions may screen grievances and arbitrate only those they believe are meritorious. *Melendy v. United States Postal Service,* 589 F.2d 256, 259 (7th Cir.1978). But they may not ignore a meritorious grievance or process it perfunctorily. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1272 (9th Cir.1983).

■ The grievance process need not be error free. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Castelli,* 752 F.2d at 1482. Courts may upset union decisions on employee grievances only if the union shows reckless disregard for an employee's rights. *Castaneda v. Dura-Vent Corp.,* 648 F.2d 612, 618 (9th Cir. 1981). To constitute arbitrary conduct, omissions must be egregious, unfair and unrelated to legitimate union interests. *Robesky,* 573 F.2d at 1090.

■ Finally, a union's duty includes some minimal investigation and preparation of employee grievances, the thoroughness of which depends on the given case. *Tenorio v. N.L.R.B.,* 680 F.2d 598, 601 (9th Cir.1982). The union should be held to a higher standard of care in discharge cases

**1466**

involving off-duty conduct because the sanction is severe and the nexus between job performance and the alleged misconduct is more attenuated.

■ The merits of the grievance are important in determining the sufficiency of the union's representation. *Gregg v. Chauffeurs, Teamsters & Helpers Union Local 150*, 699 F.2d 1015, 1016 (9th Cir. 1983). Reliance on the advice of competent counsel will not insulate the union from liability. *Id.* at 1017.

### District Court's Findings

The findings below are comprehensive and show concern for the sanction Johnson received. The court concluded that the union's representation was minimally acceptable.

■ The court properly rejected Johnson's general complaints about his employment and focused on the union's decision to withdraw his grievance from arbitration. The court found that Peer made a rational judgment not to arbitrate based on: Peer's expertise in the field, Johnson's criminal conviction following a guilty plea, awareness of arbitrators' rulings in similar cases and other documentary evidence in Johnson's file. The court further found decision makers in the grievance process bore no discriminatory animus toward Johnson.

Although the union's investigation was minimal, further investigation "would not have resulted in the development of further evidentiary matters that would have caused Mr. Peer and the union to make a determination other than the one which was made," said the court.

The court found that Johnson had not made an appropriate complaint about the harassment and jealousy over his "unconventional style" (i.e., long hair, beard, and promotion to full-time status pursuant to new system). While disagreeing personally with the severe discharge sanction, the court concluded there was a sufficient legal basis for the Postal Service's decision. This conclusion was reached under a heightened standard of care for a discharge case.

The court's findings are not clearly erroneous. Moreover, the "ultimate finding" that the union did not breach its duty of fair representation is supported by the facts and law. At trial, Judge Quackenbush expressed concern that Peer never communicated with Johnson, although Peer considered Johnson his client. Additionally, the court criticized the Postal Service's grievance procedure that allows decision-making by persons who do not hear evidence. These derelictions do not constitute arbitrary, discriminatory or bad faith conduct on the union's part.

■ The union did not depart from its established procedures for handling grievances. *See Tenorio*, 680 F.2d at 602. Nor was the withdrawal from arbitration made hastily, *see Gregg*, 699 F.2d at 1016, or in reckless disregard for Johnson's rights, *see Castelli*, 752 F.2d at 1482. Because the union must balance many collective and individual interests when it decides how to pursue a grievance, courts should accord substantial deference to the union's decisions. *Dutrisac*, 749 F.2d at 1273.

■ Reviewing the merits of this grievance, the Postal Service was properly concerned about public confidence in the rural mail delivery system. Johnson's trustworthiness was undermined by his admission of guilt to criminal theft. His claim that there is no logical nexus between his misdemeanor conviction and job performance must fail.

In analogous cases reviewing federal government discharges, courts have upheld the agency decisions where there exists a sufficient nexus between the off-duty offense and job performance. *See, e.g., Hayes v. Department of the Navy*, 727 F.2d 1535 (Fed.Cir.1984) (assault and battery on ten-year-old girl); *Bonet v. United States Postal Service*, 712 F.2d 213 (5th Cir.1983) (per curiam) (sexual molestation

of step-daughter, absent conviction); *Abrams v. United States Department of the Navy,* 714 F.2d 1219 (3rd Cir.1983) (violent criminal misconduct); *Sherman v. Alexander,* 684 F.2d 464 (7th Cir.1982), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983) (taking indecent liberties with a 12-year-old child); *Yacovone v. Bolger,* 645 F.2d 1028 (D.C.Cir.), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981) (shoplifting); *Taylor v. United States Civil Service Commission,* 374 F.2d 466 (9th Cir.1967) (vagrancy and lewdness).

This case is distinguishable from those where the off duty misconduct is unrelated to the employee's on-the-job performance. Where off duty conduct is totally unrelated, courts have been more inclined to reverse discharge decisions. *See, e.g., D.E. v. Department of the Navy,* 721 F.2d 1165 (9th Cir.1983) (removal for sexual abuse of seven-year-old daughter reversed); *McLeod v. Department of the Army,* 714 F.2d 918 (9th Cir.1983) (removal for possession of marijuana reversed)[3]; *Young v. Hampton,* 568 F.2d 1253 (7th Cir.1977) (dismissal for possession of controlled substance reversed).

■ Johnson's appeal focuses on the wrongful discharge aspect of his complaint. However, a cause of action for breach of a collective bargaining agreement may not be maintained if the union provided fair representation. *Hines,* 424 U.S. at 570–71, 96 S.Ct. at 1059–60; *Vaca,* 386 U.S. at 186, 87 S.Ct. at 914; *Keppard v. International Harvester Co.,* 581 F.2d 764, 766 (9th Cir. 1978). The district court properly concluded that the union did not breach its duty of fair representation.

Johnson has failed to show that he is entitled to relief. The court's findings and conclusions are adequate for purposes of Rules 41(b) and 52(a), Fed.R.Civ.P. *See Irish v. United States,* 225 F.2d 3, 8 (9th Cir.1955) (findings adequate if sufficiently comprehensive to provide a basis for decision and supported by the evidence). The district court's order of dismissal with prejudice is affirmed.

---

**3.** Recently, the Merit System Protection Board ("Board") held that in actions appealable to the Board, agencies may rely on a rebuttable presumption of nexus arising in egregious circumstances from the nature and gravity of the off-duty misconduct. *Johnson v. Department of* *Health and Human Services,* 22 M.S.P.R. 521 (1984) (available on WESTLAW). In reaching this holding, the Board disagrees with *D.E.* and *McLeod,* Ninth Circuit cases rejecting such a presumption.