999 F.2d 546
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gerald F. WARREN, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-35558.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 6, 1993.*
Decided July 14, 1993.
 
 Before TANG, POOLE and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gerald Warren, a Vietnam veteran, appeals the district court's Fed.R.Civ.P. 41(b) dismissal of his malpractice suit against the government.[1] The issue was whether various Veterans' Administration ("VA") doctors committed malpractice by allegedly misdiagnosing Warren as "bipolar" and treating him with Lithium. Five psychiatrists, three treating physicians and two reviewing experts, testified at the bench trial. Four of the five doctors opined that the diagnosis and treatment either met or exceeded the requisite standard of care. The district court concluded that Warren failed to prove malpractice. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Warren served in Vietnam for a little under one year, beginning in March 1969. He claims to have suffered both from Agent Orange exposure and a febrile (high fever) illness while in action.[2] In 1985, Warren, who was already being treated for Post-Traumatic Stress Syndrome ("PTSD"), sought VA psychiatric counseling because he was anxious, depressed, and felt overheated. Dr. Bonner, his first VA physician, first diagnosed him as "bipolar," a mood disorder formerly known as "manic-depressive," and prescribed Lithium, a mood stabilizer. Dr. Bonner later changed his diagnosis to "hypomanic," a milder form of mood disorder. He monitored Warren's Lithium level and saw him forty times in two years. Warren did not complain about the Lithium; indeed, the family court required Warren to take Lithium in order to visit his children who were in his ex-wife's custody.
 
 
 4
 In July 1987, Warren was admitted to a hospital because of Valium withdrawal. For the next four months, a Dr. Garner treated him by prescribing Lithium and monitoring his Lithium levels.
 
 
 5
 In Summer 1989, Warren complained to his then physician, Dr. Spaar, of headaches and child custody battles with his ex-wife. Dr. Spaar did thyroid and kidney function studies, and ordered a neurological workup. Warren's CAT scan was normal; the neurological exam was negative for brain damage; the diagnosis was "tension headaches." Warren, however, wanted to stop taking Lithium. Dr. Sparr saw this request as a ruse to get the court to drop the Lithium as a prerequisite for visitation rights, and he refused to take Warren off Lithium. Warren stopped taking the drug on his own accord for a while.
 
 
 6
 In November 1989, Warren returned to Dr. Garner. Warren complained about the Lithium and requested a rediagnosis. Dr. Garner diagnosed Warren as suffering--not from bipolar disorder--but from PTSD, mood instability, and mild organic brain dysfunction which caused a learning disability.
 
 
 7
 In July 1990, Warren filed a series of three civil actions against the VA, alleging, among other things, malpractice for misdiagnosing him as bipolar and treating him with Lithium. The cases were consolidated, and the plaintiff filed an amended complaint, alleging only medical malpractice under the Federal Tort Claims Act ("FTCA").[3] At his bench trial, the district court heard testimony from five psychiatrists, the above three treating doctors above and two outside experts. The court held that the plaintiff failed to satisfy his burden of proving lack of care, treatment, or diagnosis by the VA, and it dismissed the three consolidated cases pursuant to Fed.R.Civ.P. 41(b). Warren filed a timely notice of appeal.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 8
 The district court had jurisdiction based on 28 U.S.C. § 1346(b). We have jurisdiction under 28 U.S.C. § 1291. In a Fed.R.Civ.P. 52(c) dismissal, the judge's factual findings are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(c) Advisory Committee Notes; Johnson v. United States Postal Serv., 756 F.2d 1461, 1464 (9th Cir.1985) (laying out test for Rule 41(b), the precursor to Rule 52(c)). A district court's finding of negligence is a finding of fact reviewed under the clearly erroneous standard. Vollendorff v. United States, 951 F.2d 215, 217 (9th Cir.1991).
 
 III.
 DISCUSSION
 
 9
 A. Legal standard for malpractice.
 
 
 10
 For actions brought under section 1346(b) of the Federal Tort Claims Act, the federal district court applies the law of the state in which the alleged negligent act occurred. Brock v. United States, 601 F.2d 976, 978 (9th Cir.1979). In this case, Oregon law applies. Under Oregon medical malpractice law, the standard of care is that of a reasonably careful practitioner in the same discipline and circumstances. Creasey v. Hogan, 637 P.2d 114, 120 (Or.1981). Thus, the plaintiff bears the burden of proving by a preponderance of the evidence that the VA doctors did not use reasonable care in diagnosing him as bipolar and treating him with Lithium. He also must prove that the alleged misdiagnosis and treatment injured him. Wintersteen v. Semler, 255 P.2d 138, 140 (Or.1953). Warren failed to prove either of these things.
 
 
 11
 B. VA doctors used reasonable care.
 
 
 12
 The VA doctors used reasonable care in diagnosing Warren as "bipolar" and treating him with Lithium. Dr. Garner, who served as the plaintiff's witness, testified that when he treated Warren in 1987, he felt bipolar was a reasonable diagnosis and Lithium was a reasonable treatment. The other four psychiatrists all agreed that the continued diagnosis of "bipolar" was a reasonable one. The differences in diagnoses are ones of degree--all the doctors agree that Warren suffers from a mood disorder which is characterized by mood swings, both high and low. Dr. Garner calls it "mood instability;" Dr. Bonner calls it "hypomanic," a lesser form of bipolar disorder; Dr. Atkinson places Warren "somewhere in the middle" on the spectrum of bipolar mood disorders. Monitored treatment with Lithium, a mood stabilizer, would therefore have been an appropriate treatment under any of these diagnoses.
 
 
 13
 C. Plaintiff failed to prove his theory--that an illness he got in Vietnam caused him brain damage.
 
 
 14
 Dr. Garner testified that when his predecessors failed to make the same diagnosis--mild organic brain syndrome--that Garner eventually arrived at, they fell below the requisite standard of care. However, the district court noted that Dr. Garner was "more than an advocate for Mr. Warren. He has joined Mr. Warren's cause." In addition, the plaintiff's theory--that his febrile illness in Vietnam caused mild organic brain syndrome--was tenuous.
 
 
 15
 First, there was scant evidence of organic brain syndrome. Memory problems--the only such evidence according to Dr. Atkinson--showed up only in the second of three neuropsychological examinations. Dr. Atkinson testified that a memory deficit caused by organic brain syndrome would remain constant over time, not fluctuate as did Warren's memory problem. Warren's memory deficit was more likely the result of his PTSD--Dr. Atkinson testified that people with PTSD also suffer from thinking and memory problems which crop up when they encounter stress.
 
 
 16
 In addition, there was no evidence anywhere in Warren's medical record of this febrile illness. Dr. Atkinson testified that in order to cause organic brain syndrome, the febrile illness would have rendered Warren delirious and required treatment. Warren had no field treatment of any kind for his alleged febrile illness.
 
 
 17
 Last, Dr. Garner failed to consider a diagnosis other than organic brain syndrome for the symptoms he described--anxiety, emotional "discontrol" and Warren's inability to organize himself. Dr. Atkinson testified that memory impairment and mood disturbance are both characteristic of PTSD.
 
 
 18
 All the doctors agreed that Warren receives "very adequate" to "excellent" treatment for PTSD, and he receives a 50% disability pension for PTSD. Beginning in 1985, Warren has availed himself of a host of VA services: PTSD counseling, vocational rehabilitation, marriage counseling, individual psychological counseling, general medical treatment, and neurological examinations--in addition to treatment with prescription medicine. He has been treated in seventeen different clinics, and has had ninety nine visits to the VA in the last two years. The district court did not err in finding that Warren failed to prove malpractice.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Effective December 1, 1991, a motion to dismiss in a bench trial under Fed.R.Civ.P. 41(b) on the ground that a plaintiff's evidence is legally insufficient should be treated as a motion for judgment on partial findings as provided in Fed.R.Civ.P. 52(c). Fed.R.Civ.P. 41(b) Advisory Committee Notes
 
 
 [2]
 His Agent Orange examination was negative, and there was no evidence of his febrile illness in his medical record
 
 
 [3]
 When the district court consolidated the three cases, they lost their separate identities and became a single action, CV-90-766. 9 Wright & Miller, Federal Practice and Procedure § 2382 (1971). When the cases were consolidated, Warren's attorney filed an amended complaint in the lead case. The plaintiff thus waived the causes of action alleged in the original complaints which were not alleged in the amended complaint. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987)