81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Duane LOVE, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA; Department of General Services, et
al., Defendants-Appellees.
 No. 95-15032.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided April 4, 1996.
 
 Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Duane Love appeals the district court's judgment denying him relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 Following an eight-day bench trial the district court ruled that Love, who is African-American, failed to prove that his termination from the California State Police (CSP) was due to his race or was in retaliation for Love's filing of a discrimination complaint. The district court further held Love had been a victim of a hostile working environment but denied him relief because the pre-1991 version of Title VII, which governs this controversy, does not allow compensatory damages nor reinstatement in these circumstances.
 
 
 4
 In this bench trial, Judge Shubb made thorough and precise oral findings of fact. We review these findings for clear error. Price v. United States Navy, 39 F.3d 1011, 1021 (9th Cir.1994). In the Title VII context, the district court's findings on the existence of racially-discriminatory intent, retaliatory motive, and pretextual reasons for termination are questions of fact. Pullman-Standard v. Swint, 456 U.S. 273, 287-88 (1982); Edwards v. Occidental Chemical Corp., 892 F.2d 1442, 1448 (9th Cir.1990). The district court's ruling on the existence of a hostile work environment is a mixed question of law and fact subject to de novo review. Jordan v. Clark, 847 F.2d 1368, 1375 n. 7 (9th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 5
 The evidence at trial showed that within Love's CSP unit racial joking, which included the imitation of comedic black television characters, was common. The racial joking was at first good-natured and inoffensive, with both blacks and whites participating equally. Among the most active participants were Love and Jerry Scher, a white officer.
 
 
 6
 In November 1990, Love and other officers came to believe that Scher was receiving preferential assignments from their supervisor, Sergeant Steven Stone.[1] Love and several other officers complained to Stone, who vigorously denied the accusation of favoritism. The friendly atmosphere of the unit changed soon thereafter. The racial joking between Love and Scher stopped immediately, and by Christmas 1990 the racial joking in the unit had ceased completely due to the tension between the officers.
 
 
 7
 In the wake of the complaint about Scher's preferential assignments, Stone began to supervise Love closely, checking up on him to verify his whereabouts and watching for infractions of CSP policy. Although Stone was hostile to Love, it was not because of Love's race or because Love had complained about racial harassment. Stone was hostile to Love because he had caught Love sleeping at the state capital during pro and anti-Gulf War demonstrations. The hostility between Love and Stone grew deeper as a result of a heated argument in mid-January, 1991, when Stone believed Love had disobeyed specific orders not to leave his post. Stone filed a disciplinary complaint against Love for the incident and a CSP investigation was begun.
 
 
 8
 On February 6, 1991, Stone and Sergeant Cathy James discovered Love at his post in a reclining position, with his feet up, arms folded across his chest, and eyes closed. James filed a disciplinary complaint against Love for sleeping on duty. A CSP investigation into this charge concluded that Love was guilty of at least being inattentive to duty while on post. This was Love's fourth infraction for either sleeping or being inattentive on duty and the CSP terminated him.
 
 
 9
 The district court held Love was subjected to a hostile work environment on account of the racial joking from approximately November 25, 1990 to January 2, 1991. We agree. The record shows the racial joking was not offensive before November, but became so once hostility arose among the officers after the complaint about Scher's preferential assignments. The uncontroverted testimony was that the racial joking ceased by the beginning of January 1991. At that point, the hostile work environment also ceased.
 
 
 10
 Although Stone subjected Love to heightened supervision beyond January 2, this did not extend the hostile work environment. The district court found that Stone had no racial animus towards Love, nor was Stone's heightened supervision racially motivated. Stone was personally hostile toward Love and this no doubt made the workplace uncomfortable. But a workplace that is uncomfortable due to personal hostility is not a "hostile work environment" for the purposes of Title VII.[2]
 
 
 11
 We also agree with the district court that the version of Title VII governing this case does not provide Love with a remedy for the hostile work environment he endured from November, 1990 to January, 1991. Before 1991 legislation, Title VII allowed the district court to grant only equitable relief, not damages. 42 U.S.C. § 2000e-5(g) (1972). The equitable relief sought by Love, reinstatement, was prohibited unless Love could show he was discharged for racially-discriminatory reasons. Id.[3] The district court held Love failed to make this showing.
 
 
 12
 It was not clear error for the district court to rule that Love was not discharged for racially-discriminatory reasons. See Swint, 456 U.S. at 277-78. Love presented no evidence indicating that race played a role in the decision to terminate him. Love endured racial joking, but the mere existence of offensive comments is insufficient proof that an employment decision was based on race. See Price Waterhouse, 490 U.S. at 251.
 
 
 13
 The dismissal may have come about as a result of Stone's over-supervision, but Stone was not shown to have harbored racial animus nor was his over-supervision racially motivated. Love did not prove that any of the other decisionmakers responsible for his discharge were racially motivated either.
 
 
 14
 Because Love failed to present evidence showing it was more likely than not that race played a role in Love's termination, the district court properly applied the pretext standard of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under the pretext standard, if a plaintiff makes a prima facie showing of racial discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharge. The burden then shifts back to the plaintiff to show the articulated reason is a pretext for an unlawful motive. Id; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).
 
 
 15
 The district court was not clearly erroneous in finding that CSP's articulated reason for terminating Love was valid and not a pretext. CSP's reason for terminating Love was that he received a fourth infraction for either sleeping or being inattentive on duty. Other officers, including whites, had been terminated for three or more similar infractions.[4] The three or more infraction policy was applied equally to Love and other officers and was properly viewed by the district court not to be a pretext.
 
 
 16
 We further agree with the district court that Love did not prove he was terminated in retaliation for filing a discrimination complaint. See 42 U.S.C. § 2000e-3(a). On January 25, 1991, Love wrote a letter to Commander Burt Williams in which Love described his version of the circumstances surrounding the mid-January heated argument between Love and Stone. Although the January 25, 1991 letter included sporadic references to discrimination, Williams testified that at the time he understood Love's letter to be a response to the allegations levied by Stone and not a discrimination complaint. Williams also testified that he did not consider, and had forgotten about, Love's January 25, 1991 letter when Williams concurred in the recommendation to terminate Love. The district court specifically found Williams' testimony on these points credible, a finding to which we give deference. Johnson v. United States Postal Service, 756 F.2d 1461, 1464 (9th Cir.1985). In light of Williams' credible testimony, we cannot say that Williams recommended Love's termination in retaliation for the January 25, 1991 letter.
 
 
 17
 Nor does the evidence indicate that any other member of the CSP involved in Love's discharge harbored a retaliatory motive. Stone and James who caught Love either sleeping or inattentive on duty did not know of the January 25, 1991 letter and thus could not have been retaliating for it. None of the other members of the CSP involved in the decision to terminate Love knew of the January 25, 1991 letter, except Williams. Thus, there was insufficient evidence to show Love was discharged for a retaliatory reason.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The complaining officers consisted of Love, another African-American, and two whites. The officers believed Stone was favoring Scher not on account of race, but on account of personal friendship
 
 
 [2]
 It may be that Love had a remedy under California law for his workplace treatment. The district court ruled however that Love's state law claims were procedurally barred, a ruling Love does not contest on appeal
 
 
 [3]
 Love also requests we issue an injunction recognizing the hostile work environment in the CSP and ordering it to cease. We decline to do so. The district court found, and we agree, that the hostile work environment ceased over five years ago
 
 
 [4]
 Love's own disciplinary record reveals the CSP took infractions for sleeping on duty seriously. In the years before the incidents giving rise to this controversy, Love was disciplined three times for sleeping on duty, each time receiving either a suspension or a cut in salary