116 F.3d 488
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arthur WILLIAMS, Plaintiff-Appellant,
v.
ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation;
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW, AMALGAMATED LOCAL 887-UAW, an
unincorporated labor union, Defendants-Appellees.
Arthur WILLIAMS, Plaintiff,
and
MIKE PINCHER, Appellant,
v.
ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation;
United Automobile, Aerospace and Agricultural Implement
Workers of America, UAW, Amalgamated Local 887-UAW, an
unincorporated labor union, Defendants-Appellees.
 Nos. 96-55339, 96-56317.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 3, 1997**
Decided June 5, 1997.
 
 Appeal from the United States District Court for the Central District of California, Nos. CV-94-03059 RAP (BQRx), CV-94-03059 RAP (BQRx); Richard A. Paez, District Judge, Presiding.
 Before: HUG, Chief Judge; FERNANDEZ and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In these cases Arthur Williams appeals the district court's grant of summary judgment and award of costs to the defendants in his hybrid labor action against Rockwell International Corporation and Local 887 of the United Automobile, Aerospace and Agricultural Implement Workers of America; and his attorney, Mike Pincher, appeals sanctions imposed upon him by the district court. We have jurisdiction under 28 U.S.C. § 1291,[1] and we affirm but reduce the awards of attorneys' fees in one respect.
 
 
 3
 * We review a grant of summary judgment de novo in the light most favorable to the nonmoving party to determine if there are genuine issues of material fact under the relevant substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The undisputed facts establish that Williams's claims are either time barred, subject to dismissal for failure to exhaust Union remedies, fail to raise triable issues of fact, and/ or are aimed at the wrong party.
 
 
 4
 Given that Williams argues that his discovery of the Comer letter in December 1991 began a new statutory limitations period, the only grievances that might be relevant to us are the ones he initiated after viewing the Comer letter, i.e., grievance Nos. RD 02037, RD 02044, RD 02045, RD 02050, and RD 02653.[2]
 
 
 5
 * Williams filed this suit on May 11, 1994. He learned July 22, 1993 that Local 887 had settled grievance Nos. RD 02037, RD 02050, and RD 02653. Williams did not appeal the resolution of 02050 or RD 02653 within the Union. Therefore, Williams either didn't exhaust mandatory Union remedies in RD 02050 and RD 02653, see Clayton v. International Union, 451 U.S. 679, 692 (1981) (holding exhaustion required where it might result in "complete relief ... or reactivation of [the] grievance"), or, if exhaustion wasn't required, failed to file suit within six months after learning of the Union's decision. See Del-Costello v. International Bhd. of Teamsters, 462 U.S. 151, 155 (1983). We need not decide which is true as it is clear that either way his claims based on RD 02050 and RD 02653 are barred.
 
 B
 
 6
 Williams appealed the settlement of RD 02037 within the Union. On November 17, 1993, he learned that the Local had denied his appeal. Williams also learned by letter dated November 23, 1993 that the International Union had denied his appeal in RD 02045, ruling that he had no appeal rights under the UAW constitution because he was no longer a member. Williams took no further steps in the Union appeals process on RD 02037 (or RD 02045), but filed this lawsuit less than six months later.
 
 
 7
 Williams argues that (1) the statute of limitations for filing suit on RD 02037 was tolled until he learned of the Union's decision regarding his appeal rights in RD 02045, cf. Galindo v. Stoodv Co., 793 F.2d 1502, 1510 (9th Cir.1986) (holding fair representation claim not based on how grievance is presented to arbitrator "is tolled while good faith attempts are made to resolve that claim through grievance procedures"), but (2) pursuing further Union appeals in RD 02037 after the Union's decision on RD 02045 would have been futile in light of the ruling that he had no appeal rights. He submits that he proceeded through Union channels on RD 02037 in good faith until the Union first ruled he had no standing to appeal, at which point he reasonably gave up and timely sued.
 
 
 8
 For their part, Rockwell and Local 887 argue that when Williams received the Union's November 1993 decision on RD 02045 he was in a Catch-22: if the Union was correct that he had no standing to appeal, he had wasted his time appealing and the limitations period had been running; but if the Union was wrong, Williams should have appealed to the Union's Public Review Board and risked wasting more time.[3] (Rockwell and Local 887 disagree about whether it was clear the Union was correct that Williams had no appeal rights.) Williams responds by noting that in rejecting his standing to appeal in RD 02045, the Union cited a PRB case; he argues that although he pursued his Union remedies in good faith to that point, the citation of apparently controlling PRB authority put him on notice that further pursuit of Union remedies regarding RD 02037 would be futile.
 
 
 9
 In order to show that appealing RD 02037 further within the Union (or appealing RD 02045 to the PRB) would have been futile, Williams must demonstrate that he couldn't have gotten a fair hearing or that the relief available would have been inadequate or untimely. Clayton, 451 U.S. at 691-92. Williams argues that he could not have appealed RD 02045 to the PRB because the Union's decision on his appeal rights was a matter of "official collective bargaining policy" unreviewable by the PRB under the UAW constitution. However, that argument lacks merit as intra-Union appeal rights have nothing to do with bargaining policies.
 
 
 10
 In order to decide whether Williams should have appealed in RD 02037 and/or RD 02045, then, we would have to determine whether PRB caselaw absolutely foreclosed Williams's right to appeal; and if it did, we would then have to decide whether the limitations period for RD 02037 should nonetheless have been tolled until late November 1993 on the ground that Williams was making "good faith efforts" by pursuing his intra-Union grievance appeals even though he lacked standing. Cf. Galindo, 793 F.2d at 1510.
 
 
 11
 However, we need not enter that thicket, for even assuming that Williams's suit over grievance No. RD 02037 was timely filed, his Statement of Genuine Issues in opposition to summary judgment contained only conclusory allegations about RD 02037 (and about all the other grievances) and failed to cite specific evidence in the record suggesting that Local 887 mishandled that grievance.
 
 
 12
 In order to meet its duty of fair representation, a union is required only to perform a "minimal investigation" of a grievance. Tenorio v. NLRB, 680 F.2d 598, 601 (9th Cir.1982). We "will not question" a union's decision to terminate a grievance as long as "the union deliberated the issue in the first place." Peters v. Burlington N. R.R., 931 F.2d 534, 540 (9th Cir.1990). Local 887 was required to make a reasoned decision, but not a reasonable one; and Williams failed to raise a triable claim that this minimal duty wasn't met when the Union resolved RD 02037. Summary judgment was therefore warranted for both defendants on the claims arising from RD 02037. See Johnson v. U.S. Postal Serv., 756 F.2d 1461, 1467 (9th Cir.1985) (hybrid claim against employer fails if union provided fair representation).
 
 C
 
 13
 Grievance Nos. RD 02044 and RD 02045, as consolidated, were withdrawn by the International Union, not the Local. Williams offers no coherent argument that anything in the record supports an unfair representation claim against Local 887 regarding those two grievances.[4]
 
 D
 
 14
 In the absence of a dispute of fact that could rescue Williams's claims related to grievances RD 02037, RD 02044, RD 02045, RD 02050, or RD 02653, the district court properly granted summary judgment for Local 887 and Rockwell.
 
 II
 
 15
 It follows that the district court did not err by denying Williams's Rule 59(e) motion and his motion to file a new complaint; or by granting the defendants' motions to strike material from the complaint and to dismiss with prejudice the claim for "invidious discrimination."
 
 
 16
 In light of our disposition, Williams's request for a new judge on remand is moot.
 
 III
 
 17
 * Williams argues that the district court abused its discretion by awarding costs to Local 887 and Rockwell. He argues that the defendants should have pursued a more efficient discovery strategy and moved for summary judgment earlier, and he objects in particular to the cost of $945 for videotaping depositions. We uphold the award of costs as Williams doesn't show that the district court's award "is based on an inaccurate view of the law or a clearly erroneous finding of fact." Corder v. Gates, 947 F.2d 374, 377 (9th Cir.1991). There is no evidence that defense counsel litigated in bad faith or "with the intent to increase expenses." New Alaska Devel. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir.1989) (reviewing Rule 11 sanctions).
 
 B
 
 18
 For similar reasons, we reject Williams's argument that the district court abused its discretion by denying his motion for sanctions against defense counsel.
 
 IV
 
 19
 In the related appeal, Pincher argues that the district court abused its discretion by sanctioning him for what the court called "obstructive litigation tactics." The court found that Pincher: (1) sought leave to file an amended complaint asserting claims for intentional infliction of emotional distress and "invidious discrimination" that had already been dismissed without leave to amend, without arguing a colorable basis for what was essentially a motion to reconsider the original dismissal; (2) filed a motion to reconsider the summary judgment order, prior to the issuance of the order, asserting the identical arguments raised in opposition to summary judgment, in violation of the Local Rules; (3) filed a premature motion to stay enforcement of costs before the court had entered judgment; (4) repeatedly disrupted depositions with unfounded objections and obstreperous conduct, despite being sanctioned once by the magistrate; (5) assisted Williams in impermissibly altering deposition transcripts; (6) failed to produce requested documents, then arrived at a deposition with a shopping cart full of documents and invited defense counsel to search through it; (7) threatened opposing counsel by letter, by phone, and in person with physical harm; and (8) "constantly" used abusive language in letters and in person. In a carefully reasoned order, the district court specifically considered Pincher's conduct in relation to its power to sanction under 28 U.S.C. § 1927, the Local Rules, Fed.R.Civ.P. 30(d), and inherent authority; made findings as to each; accounted for any duplication; and concluded that sanctions were indicated for discrete violations as well as for conduct in bad faith and interference with the administration of justice.
 
 
 20
 For time spent opposing frivolous motions, the court awarded Rockwell $12,047 (out of $26,017.50 requested) and Local 887 $2,395 (of $3,925 requested). For Pincher's behavior at depositions, the court directed him to pay Rockwell and Local 887 $5,000 each. For other abusive conduct, the court ordered Pincher to pay Rockwell and Local 887 another $5,000 each. The court set the supersedeas bond at $34,442.
 
 
 21
 We review for abuse of discretion. New Alaska, 869 F.2d at 1305.
 
 
 22
 * Pincher argues that his motion to file the "supplemental complaint" wasn't frivolous because it included allegations of new, post-hearing incidents of retaliation against Williams by Rockwell and/or the Union. Yet the district court had ruled that as a matter of law, Williams had no cause of action for emotional distress or "invidious discrimination." In seeking to refile these claims Pincher ignored the court's ruling and reasserted the same legal theories with some new factual allegations. Put another way, the new allegations plainly weren't "material" in light of the court's prior legal ruling. See Local Rule 7.16(b) (motions to reconsider). The district court could fairly find the motion frivolous in its entirety.
 
 B
 
 23
 Pincher argues that the premature motion to reconsider the summary judgment order wasn't frivolous because it cited caselaw on fair representation which the district court "needed to be shown." Our previous discussion of the merits demonstrates that the duty of fair representation is largely irrelevant to the threshold reasons, ably explained by the district court, that summary judgment was appropriate in this case--i.e., procedural defaults and time bar. But even assuming the fair representation caselaw were important, Pincher's motion didn't rely on new law or new facts that couldn't have been raised earlier. It was a waste of everyone's time, which is one definition of frivolous.
 
 C
 
 24
 Pincher argues that he shouldn't have been sanctioned for prematurely filing the motion to stay enforcement of costs because "the controlling matter is that costs of some kind were to be awarded and would have to be stayed pending appeal. This was important to know in advance, regardless of whether cost amounts were to be contested." Pincher cites Larez v. City of Los Angeles, 946 F.2d 630, 636 (9th Cir.1991), where we held that a Rule 59 motion may be filed prior to the judgment.
 
 
 25
 Without deciding whether the motion to stay was timely, we agree that the Larez case, which Pincher and the court discussed at the hearing, provided at least a colorable and non-frivolous basis for seeking a stay of enforcement before the award of costs. As it was only the untimeliness of the motion to stay enforcement that the district court deemed frivolous, we modify the court's order to remove the awards of $3,311 to Rockwell and $1,450 to Local 887 for time spent opposing this motion.
 
 D
 
 26
 Pincher argues that he should be excused for his behavior at depositions because he was incited by opposing counsel. But the conduct of one's adversaries, or a "hostile environment," cannot excuse the kind of outbursts that Pincher indulged in. Pincher's verbal and written abusiveness far surpassed anything that opposing counsel said or wrote. And his invocation of the First Amendment is also meritless: Pincher wasn't being sued for libel or harassment, but has been sanctioned for unprofessionally disruptive conduct as a lawyer for which he has no excuse.
 
 E
 
 27
 Pincher blames most of the other discovery disputes and delays on opposing counsel. He raises mainly issues of credibility that lie in the sound discretion of the district court. Having carefully reviewed the record, we do not believe the district court clearly erred in finding that Pincher was overwhelmingly at fault, or abused its discretion in imposing the sanctions. See New Alaska, 869 F.2d at 1305.
 
 
 28
 We are constrained to add, moreover, that our opinion in Combs v. Rockwell International Corp., 927 F.2d 486 (9th Cir.), cert. denied, 502 U.S. 859 (1991), made it quite clear that Pincher's "combined fraud and incompetence" in allowing clients to make wholesale and material alterations in deposition transcripts is unacceptable. Id. at 489. Yet the record in this case shows that the conduct continues. Pincher would be well advised to take Combs, and his professional and ethical obligations as a lawyer admitted to the bar of this court, seriously, because we do.
 
 F
 
 29
 Pincher submits that the sanctions should be reduced or overturned due to his financial straits, and he incorporates by reference his motion for reconsideration of our denial of a stay of enforcement pending appeal. However, neither Pincher's brief nor his prior motions in this court support by argument the request that we mitigate the sanctions on grounds of financial hardship. Pincher has therefore abandoned this issue. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988).
 
 G
 
 30
 Pincher's motion to augment the record is denied as moot.
 
 V
 
 31
 The panel will retain jurisdiction over any motions that Rockwell or Local 887 may file seeking costs or fees stemming from this appeal.
 
 
 32
 AFFIRMED AS MODIFIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Williams's notice of appeal in Docket No. 96-55339 did not indicate that he intended to appeal the district court's award of costs to the defendants or its denial of Rule 11 sanctions against counsel for Local 887, see Fed. R.App. P. 3(a), 4(a)(1), his discussion of these issues in his opening brief is enough to avoid prejudice to the appellees and to give us jurisdiction to review the challenged orders. Levald. Inc. v. City of Palm Desert, 998 F.2d 680, 691 (9th Cir.1993), cert. denied, 510 U.S. 1093 (1994)
 
 
 [2]
 In light of our disposition, we need not decide whether Williams's discovery of the Comer letter indeed revitalized the grievances we discuss
 
 
 [3]
 Rockwell also argues, and the district court evidently concluded, that even if the statute was tolled during Williams's intra-Union appeal of RD 02037, his claim is barred because in addition to the time elapsed between the denial of Williams's Union appeal and the filing of the suit, we must factor in the time elapsed between the settlement notice July 22, 1993 and the filing of Williams's Union appeal in August 1993. We see no basis for parsing the tolling that finely. If the limitations period is tolled, it is tolled until the claimant exhausts mandatory Union avenues. Galindo, 793 F.2d at 1510
 
 
 [4]
 Our disposition does not depend on whether Williams's intra-union appeals of RD 02044 and RD 02045 were by right or by "courtesy," or on whether he was told he had standing to appeal